Kenneth BROWN, Appellant

v.

COMMONWEALTH of Kentucky, Appellee.

No. 2012–SC–000264–MR.

Supreme Court of Kentucky.

Dec. 19, 2013.

Emily Holt Rhorer, Assistant Public Advocate, for appellant.

Jack Conway, Attorney General, Courtney J. Hightower, Assistant Attorney General, for appellee.

Opinion of the Court by Justice CUNNINGHAM.

On August 17, 2010, Appellant, Kenneth Brown, made an agreement to sell David Curd eight pounds of marijuana for the price of $8,000. This was not the first time Appellant had sold drugs to Curd. As usual, Appellant and Curd decided to meet the following afternoon at Autosmart 3, located in Louisville, Kentucky. Since Appellant had no mode of transportation, he asked his friend, Stewart Grice, to drive him to the car lot. Once there, Appellant, with the marijuana in tow, entered the backseat of Curd's vehicle. Appellant was immediately surprised to see an unknown male by the name of Lashawn Talbert in

the front passenger's seat. Talbert expressed concern over the presence of Grice, who was waiting in the car next to them. Accordingly, Curd started his vehicle and exited the lot. Appellant repeatedly asked Curd to pull into various parking lots they passed. Curd, however, continued driving.

At some point during this surprise excursion, Talbert pulled out his gun and pointed it at Appellant. Curd then parked in the driveway of an abandoned house. Once parked, Appellant jumped out of the vehicle to make his escape, leaving the marijuana behind. Appellant's flight was delayed as he attempted to retrieve his cell phone that was dropped upon his exit from the car.

The events which occurred after Appellant's departure from the vehicle are in dispute. Appellant maintains that Talbert, while holding the gun in his hand, leaned outside the passenger's side door and told Appellant to come back to the vehicle. As a result, Appellant swiftly reached for his own gun and began shooting at the vehicle. Without hesitation, Curd pushed on the gas and left the scene. Appellant continued shooting as the vehicle drove away. The bullets not only hit Talbert's head, but also entered a nearby house. Talbert died at a Louisville hospital three days later.

On August 30, 2010, Appellant was indicted by a Jefferson Circuit Court grand jury for the crimes of murder, possession of a firearm by a convicted felon, two counts of first-degree wanton endangerment, and tampering with physical evidence. The possession of a firearm by a convicted felon charge was later dismissed. On April 5, 2010, Appellant was also indicted for one count of trafficking in marijuana five pounds or more while in possession of a firearm. The two cases were subsequently consolidated.

The trial commenced on January 9, 2012. The jury was instructed on all degrees of homicide and self-defense. Ultimately, the jury convicted Appellant of murder, two counts of first-degree wanton endangerment, tampering with physical evidence, and trafficking in marijuana five pounds or more while in the possession of a firearm. Appellant was sentenced to twenty-four years imprisonment. Appellant now appeals his conviction and sentence as a matter of right pursuant to Section 110(2)(b) of the Kentucky Constitution.

### Right to Counsel

Appellant first argues that the trial court erred in failing to dismiss the indictments against him due to a violation of his Sixth Amendment right to counsel. This argument has several components. First, Appellant maintains that his attorney-client privilege was violated when police searched his jail cell and seized privileged material. Secondly, Appellant asks us to find that the Commonwealth's seizure of privileged information amounted to an infringement on his right to counsel. Thirdly, Appellant believes this infringement required the trial court to dismiss the indictments against him.

Appellant's trial was originally scheduled for June 28, 2011. Shortly before his trial, around June 16, 2011, Appellant mailed letters to several media outlets. Appellant's letters essentially stated that he was unjustly imprisoned. Appellant also made numerous admissions as he detailed the events of August 18, 2010, including the fact that he killed the victim. The Commonwealth unsuccessfully attempted to obtain the original letters by subpoenaing the media outlets.

On the day Appellant's trial was to begin, the judge decided to continue the trial date. Later that afternoon, Detective Brenda Wescott of the Louisville Metro

Police Department contacted a different judge and obtained a warrant to search Appellant's jail cell. The purpose of the search was to locate the original letter Appellant had sent to the media outlets. Two Louisville Metro Correctional Officers searched Appellant's jail cell and seized approximately forty-two documents. The seized documents were given directly to Detective Wescott who later emailed the documents to the prosecutor and defense counsel. Appellant requested that the trial judge conduct an *in camera* review of the documents, which he summarily performed. The trial judge sealed approximately twenty-four documents as protected by the attorney-client privilege and ordered Detective Wescott not to communicate with anyone about the items seized.

Appellant moved to dismiss the indictments. On December 9, 2011, a hearing on the motion was held. The trial court determined that there was no intrusion upon Appellant's right to counsel. To support its conclusion, the trial court justified Detective Wescott's actions in obtaining a warrant by stating that the original copy was needed in order to authenticate the copy she received from the media. The trial court further opined that no prejudice had occurred based on Detective Wescott's testimony that she did not discuss the contents of the privileged documents with anyone.

■ Whether the seizure of privileged material from a defendant's jail cell violates that person's right to counsel is one of first impression in the Commonwealth of Kentucky. The U.S. Supreme Court addressed this legal argument in *Weatherford v. Bursey*, 429 U.S. 545, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). In that case, Bursey, an undercover law enforcement agent, and Weatherford were arrested for vandalizing a federal building. *Id.* at 547, 97 S.Ct. 837. In an effort to preserve his cover, Bursey met with Weatherford and his attorney on two separate occasions in order to prepare for trial. *Id.* at 547–48, 97 S.Ct. 837. Bursey maintained that at no time had he passed along any information gathered at the two meetings to his superiors or the prosecuting attorney. *Id.* at 548, 97 S.Ct. 837. The Court found that because Bursey did not disclose any of the information gathered at the meetings, and since the intrusion was not purposeful, Weatherford's right to counsel had not been violated. *Id.* at 558, 97 S.Ct. 837. Subsequently, the U.S. Supreme Court again commented on this unique argument, stating that even when the government does purposefully intrude into the attorney-client relationship, prejudice to the defendant must be shown. *United States v. Morrison*, 449 U.S. 361, 101 S.Ct. 665, 66 L.Ed.2d 564 (1981).

The Sixth Circuit, in *United States v. Steele*, listed the following four factors to consider when determining whether the government has intruded on a defendant's right to counsel:

1) whether the presence of the informant was purposely caused by the government in order to garner confidential, privileged information, or whether the presence of the informant was the result of other inadvertent occurrences;

2) whether the government obtained, directly or indirectly, any evidence which was used at trial as the result of the informant's intrusion; 3) whether any information gained by the informant's intrusion was used in any other manner to the substantial detriment of the defendant; and 4) whether the details about trial preparations were learned by the government.

727 F.2d 580, 585 (6th Cir.1984) (citing *Weatherford*, 429 U.S. at 554, 97 S.Ct. 837;

*United States v. Brugman,* 655 F.2d 540, 546 (4th Cir.1981)).

With the aforementioned case law in mind, we turn to the case before us. We believe Detective Wescott's motive in obtaining the search warrant was proper. While we have reservations in assuming that the original letters to the media were needed for trial, Detective Wescott stated that she believed obtaining the originals was necessary. We also find that the acquisition of privileged material was unintended. Detective Wescott testified that it was not her intent for the search to yield Appellant's privileged documents. In fact, she specifically requested that the warrant exclude "those documents protected under the legal privilege between [Appellant] and his attorney." In addition, the officer who conducted the search testified that he had no training to distinguish between legal documents and other documents. The officer simply collected all documents not contained in a manila envelope. Lastly, and most importantly, Appellant has failed to show any prejudice resulting from the seizure of the privileged documents. The prosecutor unequivocally informed the trial court that she had no knowledge of the contents of the privileged documents. Furthermore, Appellant failed to point to any privileged information that the Commonwealth either gained or used to his detriment. Therefore, this Court finds that the trial court did not err in denying Appellant's motion to dismiss the indictments.

***Motion to Suppress***

■ On September 2, 2010, after his arrest, Appellant was interviewed by Louisville Metro Police Detectives Mickey Cohn and Jon Lesher. The entire interview was recorded. Detective Lesher gave Appellant his *Miranda* rights pursuant to *Miranda v. Arizona,* 384 U.S. 436,

86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The conversation continued as follows:

> Lesher: Okay. Are you willing to talk to us?
>
> Appellant: Well, let me ask you this question, if I want a lawyer how soon could you make that happen?
>
> Lesher: When you want one you get one. I mean....
>
> Appellant: I mean, like, I would like to proceed, don't get me wrong. I would like to proceed and get this over with, you know, as soon as possible. But how quick can you because I don't have any money, you know, I'm pretty broke?
>
> Lesher: The courts will hire one for you.
>
> Appellant: So is that gonna take like a long time or weeks or months, or can you make one happen like ASAP, you put in a phone call and see because I get a lawyer, I'll make a statement. You know I would like to talk about, because this is a sticky situation, you know?

Appellant's interview continued, during which time he made numerous admissions, including confessing to shooting the victim and selling marijuana. Before trial, Appellant moved to suppress the recorded statements on the ground that he invoked his right to an attorney. The trial court concluded that Appellant's request for an attorney was ambiguous. We agree.

■ Our review of a trial court's ruling on a motion to suppress "requires a two-step determination.... The factual findings by the trial court are reviewed under a clearly erroneous standard, and the application of the law to those facts is conducted under *de novo* review." *Cummings v. Commonwealth,* 226 S.W.3d 62, 65 (Ky.2007) (citing *Welch v. Commonwealth,* 149 S.W.3d 407 (Ky.2004)). Since the facts are not in dispute, we will review

the trial court's application of *Miranda* and its progeny.

In *Miranda*, the U.S. Supreme Court stated that an accused has a right to counsel during a custodial interrogation. 384 U.S. at 444, 86 S.Ct. 1602. Once the accused makes an unequivocal request for counsel, questioning must cease. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). However, "not every use of the word *lawyer* or *attorney* by a suspect is an invocation of the right to counsel." *Bradley v. Commonwealth*, 327 S.W.3d 512, 515 (Ky.2010) (citing *State v. Gobert*, 275 S.W.3d 888, 892 (Tex.Crim. App.2009)) (emphasis in original). The test is whether the accused "articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994).

After carefully reviewing Appellant's full interview, we find that Appellant's numerous inquiries into the length of time before an attorney could be present added ambiguity to his request. Appellant stated: *"If I want a lawyer how soon could you make that happen?"*; and, "So is that gonna take like a long time or weeks or months, or can you make one happen like ASAP?" From these statements, we garner that Appellant only desired an attorney if the attorney could appear without delay. Appellant merely alluded to a need for an attorney, which is not an unambiguous invocation. *See Davis*, 512 U.S. at 462, 114 S.Ct. 2350 (suspect's statement that "[m]aybe I should talk to a lawyer" was not an unequivocal invocation of his right to counsel). Significantly, there is no indication that the detectives misled or deceived Appellant in any of their statements to him about his rights. Accordingly, the trial court did not err in denying Appellant's motion to suppress.

### RCr 7.24

Appellant next claims that he was denied a fair trial because he was not provided with the identity or opinion of the prosecution's expert witness. Appellant argues that, without this information, he was denied the opportunity to rebut the expert's opinion through effective cross-examination and the use of his own expert witness.

During Appellant's trial, the Commonwealth called Louisville Metro Police Detective Jack Jawor as an expert witness in the area of penetrability of windshield glass by bullets. Appellant's counsel was unaware that Detective Jawor was being called as a witness. Since Appellant's counsel was unprepared to question the witness, the trial court allowed Detective Jawor to testify the following morning. At that time, Appellant argued that the Commonwealth violated the spirit of RCr 7.24 due to its failure to disclose, prior to trial, the identity of its expert witness along with the expert's anticipated testimony. The trial court ruled that the Commonwealth had complied with RCr 7.24 since Appellant failed to submit a written request.

We review a trial judge's decision concerning discovery issues under an abuse of discretion standard. *Beaty v. Commonwealth*, 125 S.W.3d 196, 202 (Ky. 2003). The plain language of RCr 7.24(1) clearly requires Appellant to first request in writing the desired information. Additionally, this Court has previously held, albeit in an unpublished opinion, that expert witness "information must only be disclosed '[u]pon written request.'" *Johnson v. Commonwealth*, No. 2005–SC–000948–MR, 2007 WL 2742735, at *3 (Ky. Sept. 20, 2007). Since Appellant failed to

submit a request for the Commonwealth to identify any expert witnesses it intended to call, we find no error.

### Expert Witness Testimony

■ Appellant also argues that the trial court erred in qualifying Detective Jawor as an expert witness and finding his testimony reliable. Immediately preceding his testimony, the trial court conducted a *Daubert* hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court determined that Detective Jawor could testify as an expert in the area of bullet penetration of car windshields.

Detective Jawor's testimony mostly concerned the results of different ammunition hitting various types of car windshields. Detective Jawor stated that, after reviewing photos of Curd's vehicle, it was his opinion that a bullet hit the inside of the windshield. Since the bullet failed to penetrate the glass, causing a "spider web" type of break, it was his opinion that the bullet likely ricocheted. Detective Jawor's testimony is relevant because it gives more weight to the Commonwealth's case that Appellant was not acting in self-defense. It was Appellant's contention that the victim was hanging out of Curd's vehicle when he was shot, while the Commonwealth theorized that Curd was sitting in the passenger's seat when the bullet was fired, hitting the windshield and ricocheting into the victim's head.

■ A trial court's determination as to whether a witness is qualified to give expert testimony is subject to an abuse of discretion standard of review. *Fugate v. Commonwealth*, 993 S.W.2d 931, 935 (Ky. 1999). KRE 702 allows for a witness's expert opinion if he or she has "specialized knowledge [that] will assist the trier of fact to understand the evidence or to determine a fact in issue...."

Detective Jawor's opinion testimony certainly derived from his specialized training and experience in the area of bullet penetrability of windshield glass. He testified to a lengthy history as a certified firearms instructor, in addition to being a Louisville Metro Police Officer for over nineteen years. Detective Jawor also testified that, from 2001 to 2006, he was responsible for selecting ammunition for the Louisville Metro Police Department. Included in his duties was testing different types of ammunition in order to determine the bullets' penetrability of windshields and safety glass. In addition to having specialized training and experience, Detective Jawor's testimony likely aided the jury, as the average juror would not possess this type of knowledge. Therefore, we believe that Detective Jawor was qualified as an expert.

■ Appellant also argues that Detective Jawor's "methodology" for arriving at his opinion fails to satisfy the *Daubert* factors. However, Detective Jawor's testimony was solely based on his training and experience, which "can be distinguished from the more extensive and complex knowledge required for testimony by traditional experts, such as accident reconstructionists and forensic pathologists." *Dixon v. Commonwealth*, 149 S.W.3d 426, 430 (Ky.2004) (citing *Allgeier v. Commonwealth*, 915 S.W.2d 745, 747 (Ky.1996)).

While Detective Jawor's testimony was not in the realm of knowledge a lay person would likely have, his testimony was not highly scientific. He did not compose a report or conduct any specific testing or experiments as it related to Appellant's case. Detective Jawor merely explained that in all of his years firing bullets at windshields and safety glass, the following three scenarios usually occur: (1) the glass

is penetrated and the bullet goes through the glass; (2) the glass is partially penetrated and the bullet gets stuck in the glass; or (3) the bullet ricochets. Detective Jawor then described, based on his own experience, what the glass would look like in these three scenarios. Finally, after viewing photographs of the vehicle's windshield, he provided his opinion of which of the three scenarios likely occurred and why.

This type of testimony is more like those situations in which a police officer gives his or her expert opinion based solely on their training and experience, not on scientific data. *See Dixon,* 149 S.W.3d at 430 (narcotics investigator allowed give his expert opinion that notations on slip of paper referred to drug transactions); *see also Sargent v. Commonwealth,* 813 S.W.2d 801 (Ky.1991) (expert testimony that the defendant intended on selling drugs as opposed to personal use was allowed because the opinion was based on officer's experience and training); *McCloud v. Commonwealth,* 286 S.W.3d 780 (Ky.2009) (officer was allowed to give his expert opinion due to his extensive experience investigating drug trafficking). Thusly, we do not believe the strict factors of *Daubert* must be met to render Detective Jawor's testimony reliable. *See Dixon,* 149 S.W.3d at 431 (A formal *Daubert* hearing on reliability may be unnecessary if the expert opinion is based on "specialized knowledge."). The trial court did not err in allowing Detective Jawor's expert testimony.

### Victim's Toxicology Report

■ Appellant's next assignment of error is that the trial court improperly excluded the testimony of Dr. Donna Stewart as irrelevant. By avowal, Dr. Stewart testified and discussed the results of the victim's toxicology report which was gathered from the victim's body on the day of the shooting. The report showed the presence of cannabinoids which, in Dr. Stewart's opinion, indicated that the victim was a "recent user" of marijuana. However, Dr. Stewart stated that she could not pinpoint the moment of use. The victim could have used marijuana within hours of the shooting to several days before the shooting. Consequently, Dr. Stewart could not give an opinion as to whether the victim was under the influence of marijuana when the altercation ensued.

Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." KRE 401. Appellant argues that evidence of the victim's recent marijuana use was relevant for the purposes of proving that he intended on robbing Appellant and to show his state of mind. We conclude that Dr. Stewart's testimony was not relevant to establish a fact of consequence. Dr. Stewart could not testify if the victim used marijuana on the day of the shooting, nor could she testify as to the amount of marijuana consumed or the effect the marijuana had on the victim. Additionally, the fact that the victim robbed Appellant was not a fact in contention. Consequently, we find no error in excluding Dr. Stewart's testimony.

### Directed Verdict

Appellant also urges this Court to find error in the trial court's denial of his motion for a directed verdict on the trafficking in marijuana charge. Appellant argues that a directed verdict was proper for two reasons. First, Appellant believes that Detective Cohn's promise that he would not charge Appellant with trafficking in marijuana entitled him to a directed verdict. However, this argument is not preserved for our review. Appellant does not request palpable error review, so we

refrain from further addressing this specific argument.

Secondly, Appellant maintains that there was not enough evidence to support a guilty verdict. We note that the trial court should refrain from granting a motion for a directed verdict if "the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty . . . ." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky.1991). The trial court must draw all fair and reasonable inferences in favor of the Commonwealth. *Id.*

The crime of trafficking in marijuana is proscribed in KRS 218A.1421, which makes it a Class C Felony for one to possess with the intent to distribute, transfer, or sell marijuana in an amount of five or more pounds. We find that the jury was presented with sufficient evidence to support a finding of Appellant's guilt. In fact, the jury was presented with Appellant's recorded interview with Detectives Cohn and Lesher, wherein he specifically admits that he was selling eight pounds of marijuana to Curd and the victim.

As Appellant correctly notes in his brief, the jury may not rely solely on his uncorroborated confession as proof of his guilt pursuant to RCr 9.60. Nonetheless, Appellant testified at trial and explained that he entered Curd's vehicle to sell marijuana. The only element not proven in Appellant's own testimony at trial was the amount of marijuana he intended on selling. However, Stewart Grice testified that Appellant stated that the bag he was carrying contained eight pounds of marijuana worth $8,000. We believe the trial court was correct in denying Appellant's motion for a directed verdict.

### Impeachment Testimony

Appellant next claims that the trial court erred in allowing the Commonwealth to play a portion of the television show, "The First 48." The investigation of the victim's death was featured on the show, which follows detectives as they investigate homicides. The Commonwealth played the jury a brief portion of the show, during which Appellant was being escorted into police headquarters. Appellant looked at the cameras with an at-ease demeanor and said, "Hello America," and expressed that he was a fan of the show. Appellant objected, stating that the evidence was irrelevant and unduly prejudicial. The trial court found that the clip was relevant to rebut Appellant's prior testimony.

Generally, the law disfavors impeachment of a witness on a collateral matter through the introduction of extrinsic evidence. *Commonwealth v. Prater*, 324 S.W.3d 393, 399 (Ky.2010) (citing *Purcell v. Commonwealth*, 149 S.W.3d 382, 397–98 (Ky.2004)). However, "the trial court has discretion to determine whether or not to permit impeachment on collateral issues when a party has opened the door to such issues by raising them in direct testimony." *Id.* at 399. During Appellant's direct examination, he stated that he was nervous when police arrested him and that he was afraid he had left his girlfriend and child in danger. Whether Appellant was nervous or scared upon his arrest has no relevance to whether or not he committed the crimes for which he was charged. Yet, Appellant opened the door to this collateral issue and the trial court has wide discretion to allow for his impeachment. We find no error. Furthermore, such a showing of what was only a routine and perfunctory part of the investigation was harmless error, if error at all.

### Mistrial

Lastly, Appellant maintains that the trial court erred in denying his motion

for a mistrial after the Commonwealth failed to redact portions of Appellant's recorded interview with Detectives Cohn and Lesher. The record reflects that Appellant initially provided the Commonwealth with a list of requested redactions. However, prior to jury selection, Appellant's counsel notified the Commonwealth that she had discovered additionally needed redactions. This portion of the interview contained a statement by Detective Cohn, wherein he states his opinion of what Appellant should have done. It is Appellant's position that Detective Cohn was implying that Appellant was wrong in his actions.

Thereafter, the Commonwealth provided Appellant with a copy of the transcript and recording with the final redactions included. The requested redaction was not removed. Even though Appellant's counsel was provided with a copy of the final redactions, she did not inform the trial court that part of her requested redactions had not been removed. Accordingly, the recorded interview was played for the jury, including the following portion:

> Detective Cohn: I'll tell you what you were supposed to do, when that car pulled off you were supposed to run away. Thank God, I'm free, that car is gone. I got my life now. . . . The right thing to do would have been to let that car leave and run this way, the opposite direction of the car.

Appellant immediately objected and moved for a mistrial. The Commonwealth, however, argued that it did not agree to redact that portion of the interview, nor had Appellant complained after being provided with the final redactions. The trial court ruled in favor of the Commonwealth. Appellant did not request an admonition.

▄▄▄▄▄ A mistrial should only be granted when the error is "of such magnitude that a litigant would be denied a fair and impartial trial and the prejudicial ef-

fect could be removed in no other way." *Matthews v. Commonwealth*, 163 S.W.3d 11, 17 (Ky.2005). Indeed, "a mistrial is an extreme remedy and should be resorted to only when there is a fundamental defect in the proceedings and there is a 'manifest necessity for such an action.'" *Woodard v. Commonwealth*, 147 S.W.3d 63, 68 (Ky. 2004)'(quoting *Bray v. Commonwealth*, 68 S.W.3d 375, 383 (Ky.2002)). When reviewing a trial court's denial of a motion for a mistrial, we look for an abuse of discretion. *Shabazz v. Commonwealth*, 153 S.W.3d 806, 810 (Ky.2005).

While we believe the introduction of Detective Cohn's statement was likely improper, we do not believe it was of such magnitude that it deprived Appellant of a fair trial. Appellant did not dispute that he was the individual who shot and killed the victim. Appellant's defense was that he shot at Curd's vehicle because he was in fear of his life. Yet, during the interview with Detective Cohn, Appellant plainly stated that he shot at the vehicle so that he could retrieve the stolen marijuana. Detective Cohn's statements were made after Appellant questioned what he was supposed to do in that situation. Therefore, we find that Detective Cohn's opinion had minimal prejudicial effect, as his opinion was based on different factual circumstances than those of Appellant's defense. Moreover, Detective Cohn did not disclose his opinion regarding the appropriateness of Appellant's actions as it concerns Appellant's self-defense theory.

### Conclusion

For the foregoing reasons, the Jefferson Circuit Court's judgment is hereby affirmed.

MINTON, C.J.; ABRAMSON, KELLER, SCOTT, and VENTERS, JJ., concur. NOBLE, J., disagrees with the

conclusion that playing the short television clip was not error because the defense "opened the door," but concurs in the Court's judgment because the error was harmless.