# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: DECEMBER 14, 2017
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2016-SC-000684-MR

QUINTON THOMAS QUARLES           APPELLANT

ON APPEAL FROM CHRISTIAN CIRCUIT COURT
V.        HONORABLE JOHN L. ATKINS, JUDGE
NO. 15-CR-00022

COMMONWEALTH OF KENTUCKY          APPELLEE

## MEMORANDUM OPINION OF THE COURT

### **AFFIRMING**

Appellant, Quinton Quarles, and Keith "Slick" Ivory, were gambling at a house party in Hopkinsville, Kentucky, on the night of November 22, 2014. Quarles and Ivory got into a series of altercations. One witness, Frank Williams, Jr., helped break up one fight. He then saw Quarles retrieve a long-barreled revolver from the trunk of a car. Williams attempted to prevent Quarles from re-entering the home, but was angrily pushed aside by Quarles, who started a second confrontation with Ivory. Quarles stuck the revolver in Ivory's face and Williams asked Quarles not to shoot Ivory.

Ivory then left the building, and Williams watched from the front door as Quarles followed Ivory into the parking lot and began a third confrontation. Although Williams could not hear their exchange of words, he witnessed Ivory

making hand gestures and then saw Quarles raise the handgun and fire a single shot at Ivory's face, which resulted in Ivory's death. Ivory was unarmed. Quarles was subsequently arrested.

Upon his arrival at the Hopkinsville Police Department, Quarles was read his *Miranda* rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and signed a "Waiver of Rights" form. Quarles was subjected to custodial interrogation from approximately 10:00 a.m. to 2:07 p.m. He voluntarily agreed to talk to the police without a lawyer present. Quarles did not request for an attorney to be present before he would consent to speaking with the police. However, Quarles asked for an attorney to be present before he would consent to submit to a polygraph test or a Gun Shot Residue (GSR) test.

Because Quarles would not voluntarily submit to a GSR test, detectives acquired a valid search warrant to conduct the test. In response to further questioning during administration of the GSR test, Quarles admitted to owning the cell phone seized from his mother's house and gave Detective Brian Smith the password to unlock the cell phone. He also told Detective Smith that no one else had access to his cell phone between 2:00 a.m. and 7:30 a.m. on the day of the shooting.

Quarles was subsequently indicted and tried for the murder of Ivory. At trial, the Commonwealth offered several witnesses who described the encounters between Quarles and Ivory the night of November 22, 2014. The Commonwealth also introduced electronic data extracted from Quarles's cell phone through forensic means and the use of Quarles's password by Detective

2

Albert Finley, Hopkinsville Police Department Electronic Crimes Unit. Detective Finley offered testimony about the data he extracted, which showed a "Google search" for how to remove gunshot residue from one's hands was conducted at 2:07 a.m. on November 22, 2014—the day of Ivory's shooting.

In his defense, Quarles did not testify or put forth any witnesses to rebut the prosecution. A Christian Circuit Court jury convicted Quarles of murder. The trial court sentenced him to thirty years' imprisonment based upon the jury's recommendation.

## Motion to Suppress

Prior to trial, Quarles moved to suppress all statements made at the police department because he had invoked his right to counsel. The trial court concluded that Quarles's request for an attorney was ambiguous.

In *Brown v. Commonwealth*, 416 S.W.3d 302 (Ky. 2013), we stated: "Our review of a trial court's ruling on a motion to suppress 'requires a two-step determination . . . [t]he factual findings by the trial court are reviewed under a clearly erroneous standard, and the application of the law to those facts is conducted under de novo review.'" *Id.* at 307 (quoting *Cummings v. Commonwealth*, 226 S.W.3d 62, 65 (Ky. 2007)). Because the facts are not in dispute, we will conduct a de novo review.

Under *Miranda,* a person has the right to counsel during a custodial interrogation. *Miranda*, 384 U.S. at 444. However, *Miranda* rights may be waived by choosing to speak without counsel present, "provided the waiver is made voluntarily, knowingly, and intelligently." *Id.*

3

To determine whether the right to counsel has been invoked, the accused must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). After the accused makes an unequivocal and unambiguous request for counsel, "the interrogation must cease until an attorney is present." *Miranda*, 384 U.S. at 474.

The invocation of counsel is properly made where the accused "articulate[s] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis*, 512 U.S. at 459. In other words, "[i]f reasonable minds could differ on whether a request for an attorney had been made, the language is perforce ambiguous or equivocal." *Burnett v. Commonwealth*, No. 2005–SC–000820–MR, 2008 WL 746615, at *6 (Ky. March 20, 2008) (Noble, J., concurring in result only).

At 10:38 a.m., Quarles was asked if he would submit to a polygraph test, and he made a conditional request for counsel to be present before he would consent:

> **Quarles**: That's alright. But I would like to have my lawyer present before I do it . . . I don't have one; I need one appointed to me. I can't afford one; I need one appointed to me.

> **Detective Randall Greene**: If you're adamant about what happened, why would you?

> **Quarles**: Because I would like to have my lawyer present.

**Detective Greene**: Alright.

**Detective Greene**: I think what we're gonna do, since you don't have an attorney yet that can be present for the polygraph, we'll talk about that later. I'll wait on that, okay?

Quarles appeared to answer "Alright" and did not unequivocally state that he wanted a lawyer present at that time, nor did he choose to remain silent. The detectives respected his right not to consent and did not perform a polygraph.

At 10:59 a.m., when Quarles was asked to submit to a GSR test, he requested to speak with an attorney before he would consent to take the GSR test or any other tests:

**Quarles**: I don't want to do anything unless I talk to a lawyer. (Inaudible) I understand that, but I don't have a legal advisor, advice on this. I'm not legally trained. So, I want to talk to a lawyer before I do anything. I mean, (inaudible) I would prefer to talk to a lawyer before I do anything.

Here, we find that Quarles made an unequivocal invocation of his right to counsel prior to the GSR test, when he stated, "I want to talk to a lawyer before I do anything." Under the circumstances, a reasonable police officer would have understood Quarles's statement as a request for counsel to be present prior to the GSR test. *Davis*, 512 U.S. at 459.

If an accused requests counsel, a confession in response to further questioning without counsel present is inadmissible unless the accused waived his right to counsel by reinitiating the questioning. *Quisenberry v. Commonwealth*, 336 S.W.3d 19, 30 (Ky. 2011) (quoting *Davis*, 512 U.S. at 458). However, "[o]nly the suspect may reinitiate dialogue with the authorities; the authorities cannot continue to cajole or otherwise induce the suspect to

5

continue to speak without first affording the suspect an attorney." *Bradley v. Commonwealth*, 327 S.W.3d 512, 518 (Ky. 2010) (citing *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981)).

Once Quarles unequivocally requested counsel, all questioning should have ceased, unless Quarles voluntarily revived the interrogation. *Bartley v. Commonwealth*, 445 S.W.3d 1, 5 (Ky. 2014). Instead, during the administering of the GSR test, the detectives pressured Quarles to answer questions about his cell phone, stating that they would inevitably find the information through forensic means with or without his cooperation.

Responses given to police after a suspect invokes his Fifth Amendment right to counsel must be suppressed under the so-called exclusionary rule to discourage police misconduct. *Bartley*, 445 S.W.3d at 5. ("If the police continue to press the issue, and the defendant makes incriminating statements, those statements are properly suppressed."). Thus, the answers Quarles gave to questions about his cell phone should have been suppressed. *Id.*

Yet, this constitutional error need not disturb the trial court's ruling if the error was harmless. Our standard for finding that a constitutional error was harmless "is whether we are convinced 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Dickerson v. Commonwealth*, 485 S.W.3d 310, 327 (Ky. 2016) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

6

Put another way, we consider the improper evidence in the context of the entire trial and ask, "whether there is any substantial possibility that the outcome of the case would have been different without the presence of that error." *Thacker v. Commonwealth*, 194 S.W.3d 287, 291 (Ky. 2006).

"With this standard in mind, examining the nature of the constitutionally offensive evidence in the context of the entire trial, and in light of the overwhelming evidence of [his] guilt," *Dickerson*, 485 S.W.3d at 327, we conclude that the improperly-introduced evidence was harmless beyond a reasonable doubt. The proof from multiple witnesses was that Quarles continually badgered Ivory and initiated three different confrontations with him, including threatening to shoot Ivory and pointing a loaded gun at the victim's head. Witness Williams testified that it all culminated when he saw Quarles intentionally kill the victim at point-blank range with a pistol. Quarles put forth no evidence in his own defense.

The statements taken from Quarles were indicative only of an attempted cover-up of the crime. However, we are aware of its importance. The only evidence put forth by Quarles in his own defense was the submission of the negative GSR test. Thus, the cell phone data showing he visited a website which gave direction on how to rid himself of gunshot residue was highly incriminating. Though damning as it may have been, it is our opinion that the absence of the "Google search" would not have altered the verdict against him. Consequently, we hold that admission of the illegally-obtained statements from

Quarles about his cell phone password and usage on November 22, 2014, was harmless error.

Furthermore, since we have ruled that the data from Quarles's cell phone should have been suppressed, but was harmless error, the issue of the authentication of that information under KRE 901 is moot.

## Jury Instructions

At trial, Quarles requested that, in addition to a murder instruction, the jury be given instructions on the lesser-included offenses of manslaughter in the first-degree, manslaughter in the second-degree, and reckless homicide. His requests were denied. When considering whether a trial court erred by not giving an instruction required by the evidence, we review for abuse of discretion. *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). "An instruction on a lesser included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Commonwealth v. Hasch*, 421 S.W.3d 349, 356 (Ky. 2013) (quoting *Houston v. Commonwealth*, 975 S.W.2d 925, 929 (Ky. 1998)).

### Manslaughter First-Degree

We first address whether the instruction for manslaughter in the first-degree was required by the evidence. The offense of manslaughter in the first-degree is defined in KRS 507.030:

(1) A person is guilty of manslaughter in the first degree when:

8

(a) With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or

(b) With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in subsection (1)(a) of KRS 507.020; . . . .

During the confrontations between Quarles and Ivory, witnesses stated that Quarles threatened that he should have or could have pistol-whipped Ivory. Because the evidence shows Quarles shot Ivory in the head rather than settling on pistol-whipping him, Quarles's "intent" was clearly to do more than cause serious physical injury to his unarmed victim. Thus, the only way Quarles may have been entitled to a manslaughter in the first-degree instruction is if he acted under the influence of extreme emotional disturbance. KRS 507.030(1)(b).

**Extreme Emotional Disturbance**

We review the evidence presented at trial to determine if extreme emotional disturbance (EED) was made an issue, and whether the trial court abused its discretion by not providing a jury instruction on EED. *See Greene v. Commonwealth,* 197 S.W.3d 76, 82 (Ky. 2006). "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

9

To establish extreme emotional disturbance in a homicide prosecution, we have stated:

> There must be evidence that the defendant suffered "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act uncontrollably from [an] impelling force of the extreme emotional disturbance rather than from evil or malicious purposes. [T]he event which triggers the explosion of violence on the part of the criminal defendant must be sudden and uninterrupted."

*Hunt,* 304 S.W.3d at 34 (citations omitted).

At trial, the Commonwealth presented ample evidence to establish that Quarles shot Ivory with the intent to kill. Notably, the Commonwealth offered witness testimony that Quarles's deadly behavior was deliberate and premeditated. He initiated several confrontations with Ivory before ultimately deciding to shoot him. Thus, his actions were not the result of a "sudden and uninterrupted" event.

In contrast, Quarles offered no witnesses to prove, nor did he testify, that he killed Ivory while experiencing extreme emotional disturbance. Furthermore, Quarles offered no proof of imperfect self-defense warranting a reckless homicide instruction: Ivory was unarmed, and no evidence showed that Quarles felt he needed to use deadly force to protect himself. *See Hasch,* 421 S.W.3d at 356 (discussing the two theories of reckless homicide: "straight" reckless homicide and "imperfect self-defense"). Therefore, the trial court acted within its discretion, as no evidence existed to warrant instruction on any lesser-included offenses.

10

## Conclusion

For the reasons stated herein, we hereby affirm the decisions of the Christian Circuit Court.

All sitting.  All concur.

COUNSEL FOR APPELLANT:

John William Stewart

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Thomas Allen Van De Rostyne
Assistant Attorney General