# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.



# Supreme Court of Kentucky

2016-SC-000156-MR

DATE 3/8/18 Kim Redmon, DC

THOMAS EUGENE RILEY               APPELLANT

|  | ON APPEAL FROM TAYLOR CIRCUIT COURT |
|---|---|
| V. | HONORABLE SAMUEL T. SPALDING, JUDGE |
|  | NO. 2015-CR-00028 |

COMMONWEALTH OF KENTUCKY           APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

Appellant, Thomas Eugene Riley, was convicted by a Taylor Circuit Court jury of first-degree robbery and as a first-degree persistent felony offender (PFO). Riley was sentenced to twenty years' imprisonment for the robbery, which was enhanced to twenty-five years' imprisonment based on the PFO. Riley now appeals to this Court as a matter of right. Ky. Const. § 110(2)(b). He asserts two claims of error in his appeal: (1) that the trial court erred in allowing an improperly authenticated manual into evidence; and (2) that the trial court erred in allowing an expert to testify in spite of a lack of notice to the defense.

## I. BACKGROUND

Riley was a resident of Lexington, Kentucky. On January 23, 2015, he drove from Lexington to Campbellsville. Riley entered the Forcht Bank in

Campbellsville wearing a hooded sweatshirt, a surgical mask, and latex gloves. He brandished what was later revealed to be a carbon-dioxide-cartridge-powered BB gun. The gun closely resembled a "real" gun, specifically, it appeared as if it could be a pistol capable of firing closed-cartridge .45-caliber ammunition. As Riley pointed the gun at the bank tellers, he demanded, "this is a robbery. Hurry up." After gathering the money from the tellers, Riley left the bank with over $23,000 in cash in a small bag. The bank tellers and bystanders called 911, and police stopped Riley's vehicle nearby. The police arrested Riley and searched his vehicle, where they discovered a mask, gloves, a bag of money, and a BB gun. At this point, Riley suffered a panic attack and had to be taken to the hospital before he could be booked into the jail. Later, Riley gave a statement to the police and conceded that he did in fact rob the bank, in what he described as "a very stupid mistake."

Riley was indicted by a Taylor County Grand Jury for first-degree robbery and first-degree persistent felony offender. He was also indicted for operating a motor while under the influence of alcohol, possession of an open alcoholic beverage container in motor vehicle, and no license in possession; however, these latter charges were eventually dismissed upon motion of the prosecutor.

Riley filed a motion to exclude any description of the BB gun as a handgun, semi-automatic weapon, Glock, or pistol—all of which were terms witnesses had previously used to describe the gun used to commit the robbery. In response to that motion, the Commonwealth sought to identify the exact

2

make, model, and proper name of the gun. The Commonwealth determined that the gun was a "Umarex TDP 45 semi-auto BB pistol," and located an owner's manual for the gun on the internet, which it intended to use at trial. Six days before trial, the Commonwealth furnished Riley with a copy of the manual.

Riley filed a motion to have the owner's manual for the BB gun excluded at trial. Immediately preceding the trial, the court heard arguments on the motion. Riley argued that the manual was unauthenticated hearsay, while the Commonwealth argued that the match between the make and model numbers on the gun and the manual made it an inherently reliable record of regularly conducted activities—qualifying it for the "business records" hearsay exception of KRE 803(6).

The trial court reserved ruling on the manual's admissibility, noting that the Commonwealth would have to lay a proper foundation at trial. The court did order the manual to be heavily redacted. Any conclusions stated in the manual as to the type of harm the gun was capable of inflicting were removed. The Commonwealth removed all warnings and cautions from the manual, leaving only technical information regarding the operation of the BB gun. In this way, the trial court reasoned, the manual would not unduly influence the jury as to whether the BB gun was a "deadly weapon," an element which distinguishes first-degree and second-degree robbery. Whether Riley used a "deadly weapon" during the robbery was the central issue of Riley's jury trial.

3

At trial, Detective Riggs testified for the Commonwealth both as a lay witness and as an expert in firearms. Riggs had previously worked as a military police officer in charge of managing and maintaining weapons in the armory, and attended various trainings in firearms operation and repair. Riley objected both to the admission of the BB gun manual and to Riggs's expert testimony, claiming that his defense counsel was not notified of Riggs's intent to testify as an expert in firearms. The court overruled both objections, noting that Riley's counsel had failed to submit a request for disclosure of expert witnesses pursuant to RCr 7.24. Riggs qualified as an expert in firearms pursuant to KRE 702, and testified before the jury as to certain assertions found within the redacted manual. Riggs described the operation of carbon-dioxide-canister-powered BB guns in general and specifically stated that the BB gun in question fires a BB "410 feet per second," or "279 miles an hour." These two remarks about the speed at which the BB travels constitute the totality of Riggs's remarks regarding information derived from the manual. The trial court did not allow Riggs to testify regarding the type or severity of physical injury that a BB traveling at that speed could inflict.

## II. ANALYSIS

### A. Gun Manual

"Rulings upon admissibility of evidence are within the discretion of the trial judge; such rulings should not be reversed on appeal in the absence of a clear abuse of discretion." *Simpson v. Commonwealth*, 889 S.W.2d 781, 783 (Ky. 1994). "The test for abuse of discretion is whether the trial judge's

4

decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth. v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Riley contends that the trial court erred in allowing the admission of the BB gun manual, as, pursuant to KRE 803(6), the manual could have only been authenticated by a proper custodian—which Riggs was not. The Commonwealth concedes that Riggs was neither the custodian of the BB gun manual nor a qualified witness for the purposes of KRE 803(6). The Commonwealth emphasizes the inherently accurate nature of a commercially-published manual and points out the practical difficulties of having a custodian from the manufacturing company appear at trial. The make and model number of Riley's gun and the gun in the manual match. Therefore, the Commonwealth insists this serves as proper authentication of the manual for purposes of admission under KRE 901.

The authentication of a document (self-authenticating or not) does not exempt it from the hearsay rule. Hearsay is an out-of-court statement offered into evidence as substantive proof that the matter asserted in the statement is true. KRE 801(c). Hearsay is inadmissible unless it falls under one of the exceptions laid out in our rules. KRE 802. Authenticated documents, offered into evidence for the truth of matters asserted therein, must qualify under an exception to the hearsay rule. The trial court erroneously applied KRE 803(6) "records of regularly conducted activity," often referred to as the "business records" exception to hearsay. That rule provides:

> Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events,

5

conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all *as shown by the testimony of the custodian or other qualified witness*, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

*Id.* (Emphasis added). The Commonwealth gave up its position under this exception and fails to argue the manual fit under any other exception to general rule against hearsay.

Even had the Commonwealth not conceded its argument under KRE 803(6), that exception is inapplicable in this case. The business records exception "does not cover such writings as operating manuals, employee handbooks, internal rules and regulations, and similar materials." Robert G. Lawson, *The Kentucky Evidence Law Handbook* § 8.65[2][b] at 680 (5th ed. 2013). That is because a product owner's manual is not a "record . . . of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, [which is] kept in the course of a regularly conducted business activity, and [for which it is] the regular practice of that business activity to make the . . . record. . . ." KRE 803(6).

Because the manual was hearsay and was not properly admissible based on an exception to the rule against hearsay, we need not delve into the Commonwealth's assertion that the manual was properly authenticated. As

6

stated above, properly authenticated evidence is still subject to the hearsay rules. Therefore, the trial court abused its discretion in admitting the manual. Having found error in the trial court's evidentiary ruling, we must now determine whether that error was harmless.

If the trial court errs, this Court may still determine that the error is harmless pursuant to RCr 9.24 and the standards set forth in *Winstead v. Commonwealth,* 283 S.W.3d 678 (Ky. 2009). We evaluate non-constitutional harmless error under the "substantial influence" standard. *Id.* Under this standard we must determine whether the error had "substantial influence" upon Appellant's trial such that it "substantially swayed" the judgment. *Id.; see also Wiley v. Commonwealth,* 348 S.W.3d 570, 579 (Ky. 2010). Furthermore, RCr 9.24 states:

> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order, or in anything done or omitted by the court or by any of the parties, is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order unless it appears to the court that the denial of such relief would be inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding that does not affect the substantial rights of the parties.

Here, the jury was asked to decide whether the BB gun used in the robbery constituted a "deadly weapon" as an element of first-degree robbery. This Court has held that the Commonwealth satisfies the "deadly weapon" language of KRS 500.080(4)(b) by showing that the weapon used in the robbery was in the class of weapons "which may discharge a shot that is readily

7

capable of producing death or serious physical injury." *Wilburn v.*

*Commonwealth,* 312 S.W.3d 321, 329 (Ky. 2010).

The Commonwealth thoroughly redacted the BB gun manual prior to its

introduction. Prosecutors removed any conclusory statements as to the

potential danger of the BB gun as a weapon from the manual before it was

presented to the jury. Therefore, the jury was presented with purely technical

information regarding the operation of the BB gun. The most prejudicial piece

of information contained in the manual was the rate of speed at which the gun

can fire a BB. Even if the manual had been excluded as evidence, the jury still

would likely have found this BB gun to be a weapon "which may discharge a

shot that is readily capable of producing death or serious physical injury."

*Wilburn,* 312 S.W.3d at 329A BB gun is capable of inflicting serious physical

injury, and no special proof of its dangerous ability was required.[1] Moreover,

this Court has ruled that "a jury could reasonably determine that a pellet or BB

gun was a deadly weapon (i.e. a type of weapon from which a shot could cause

death or serious physical injury) in light of history of serious physical injuries

caused by BB or pellet guns." *Johnson v. Commonwealth,* 327 S.W.3d 501,

507 (Ky. 2010). Therefore, we do not believe that the admission of the manual

---

[1] During the trial of this case, both sides invoked the now-famous refrain, "You'll shoot your eye out," popularized in the classic 1983 movie, "A Christmas Story." No one doubts that shooting an eye out is a serious physical injury by our statutory standard. There could be no reasonable doubt that by using a BB gun to rob the bank, Riley's weapon fit the "deadly weapon" definition of KRS 500.080(4)(b).

8

"substantially swayed" the judgment in Riley's case. Even though the manual's admission amounted to error, the error was harmless.

Riley also argues that he was not afforded proper notice of the manual's admission into evidence. We reject this argument on the same grounds. Even if the lack of proper notice amounted to error, any such error was harmless for the reasons listed above.

### B. Notice of Expert Witness

Riley's final argument is that the trial court erred in allowing Detective Riggs to testify as an expert witness, as the Commonwealth did not give Riley timely notice of Riggs's intention to be qualified as an expert in firearms. Our case law in this area demonstrates that specific discovery requests are governed by RCr 7.24. *King v. Venters*, 596 S.W.2d 721 (Ky. 1980). RCr 7.24(2) provides for the Commonwealth to notify defense counsel of information upon a written request. Riley concedes that such a request was never actually made. If Riley had made such a request, the duty falls on him to provide evidence of said request, as "[i]t is the appellant's duty to present a complete record on appeal." *Steel Technologies, Inc. v. Congleton*, 234 S.W.3d 920, 926 (Ky. 2007).

"Our case law strongly supports the trial court's discretion in interpreting the meaning of RCr 7.24 . . . . Broad discretion in discovery matters has long been afforded trial courts in both civil and criminal cases." *Commonwealth v. Nichols*, 280 S.W.3d 39, 42–43 (Ky. 2009). "The test for an abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or

9

unsupported by sound legal principles." *English*, 993 S.W.2d at 941. Riley cites local Rule 802(b) as constituting a kind of "standing discovery order" in this case. However, the discovery process is governed by RCr 7.24. Other circuits have similar local rules, but those local rules have never been determinative of our analysis of disclosures pursuant to RCr 7.24.

Even if we were to consider the local rule, the Commonwealth complied with it when it supplied the defendant with its initial discovery response. The decision to qualify detective Riggs as an expert witness seems to have been a decision related to the discovery of the BB gun manual, which had just been discovered. The discovery of the manual was itself in response to Riley's own request to have the BB gun referred to by its proper name. Nothing prevented defense counsel from making a subsequent written request pursuant to RCr 7.24 to obtain an updated witness list. Kentucky Rule of Criminal Procedure 7.24(1)(c) states:

> [U]pon written request by the defense, the attorney for the Commonwealth shall furnish to the defendant a written summary of any expert testimony that the Commonwealth intends to introduce at trial. This summary must identify the witness and describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications

"The plain language of RCr 7.24(1) clearly requires Appellant to first request in writing the desired information." *Brown v. Commonwealth*, 416 S.W.3d 302, 308 (Ky. 2013).

This Court has also held that "expert witness information must only be disclosed upon written request." *Id.* (internal quotations and brackets omitted). Riley made no request for the information and so the Commonwealth was not

10

obligated to provide that information to him. The trial court did not abuse its discretion.

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Shannon Renee Dupree
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Megan K. George
Assistant Attorney General

11