89 F.3d 845
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Peter Joseph KRYSINSKI, Petitioner-Appellant,
v.
James ROWLAND, Director of the California Department of
Corrections, Respondent-Appellee.
 No. 94-16749.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 16, 1995.
Decided April 29, 1996.
 
 Before: SCHROEDER, FLETCHER, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Krysinski appeals the denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We have jurisdiction pursuant to 28 U.S.C. § 2253. We reverse in part, affirm in part and remand for further proceedings.
 
 
 3
 * Police officers arrested and interrogated Krysinski as a suspect in two assaults, one a sexual assault against Marla Oliver, and the other an assault against Sonja Samaniego.[1] An officer advised Krysinski that he was under investigation for the assault against Oliver and read him his Miranda rights. Krysinski said he understood and was willing to talk with the officer. As the questioning progressed, Krysinski stated five times that he was nervous. He twice requested the company of a colleague and once requested the company of his father. Krysinski twice asked that the tape recorder be turned off and once asked that the conversation to be "under the table"; in response, the officer explained that the recorder would stay on and that the conversation was not under the table.
 
 
 4
 Up to this point, the discussion revolved around peripheral matters such as arrangements to search Krysinski's car. The officer had not directly accused Krysinski of the crime or challenged his answers. Then the following dialogue ensued:
 
 
 5
 KRYSINSKI: Uh--
 
 
 6
 OFFICER: Did you want to ask me something?
 
 
 7
 KRYSINSKI: No, not at all. Do I get to talk to a lawyer or something?
 
 
 8
 OFFICER: Do you want to right now?
 
 
 9
 KRYSINSKI: Well, get some colleagues here or something like that cuz I'm not--
 
 
 10
 OFFICER: Okay, I will be back in just a minute.
 
 
 11
 (OFFICER LEAVES)
 
 
 12
 (OFFICER COMES BACK)
 
 
 13
 OFFICER: Okay, Peter. I finally got everything together. What I got, okay, what I got in here contains at least the results of our preliminary investigation. Okay?
 
 
 14
 KRYSINSKI: Okay.
 
 
 15
 OFFICER: And what it shows, unfortunately, at this point is that you're one and one responsible for this. Okay? Now, that's the facts. I can't control that. That I had nothing to do with. What I can control is what happens from here on. Okay?
 
 
 16
 At this point, the interrogation became confrontational. Repeatedly, the officer accused Krysinski of the crime, Krysinski denied it, and the officer said he didn't believe Krysinski. Krysinski ultimately confessed to assaulting Oliver. However, he never admitted to assaulting Samaniego.
 
 
 17
 In February 1989, an information filed in the Superior Court of Sacramento charged Krysinski with nine counts, including kidnapping and sexual assault against Samaniego, and battery, forced oral copulation, two counts of forced sexual penetration, and attempted murder of Oliver. The trial court denied Krysinski's motion to suppress his confession on Miranda grounds. The jury convicted Krysinski of all counts except sexual assault against Samaniego, one count of forced penetration against Oliver, and instead of attempted murder the conviction was of the lesser included offense of assault with force likely to cause great injury. He was sentenced to more than 30 years imprisonment.
 
 
 18
 After exhausting his state court remedies, Krysinski petitioned the federal district court for a writ of habeas corpus. Krysinski appeals denial of the writ.
 
 II
 
 19
 We review de novo a district court's decision to grant or deny a petition for habeas corpus. Calderon v. Prunty, 59 F.3d 1005, 1008 (9th Cir.1995). "Whether the suspect's words constitute a request for counsel is a legal determination which we review de novo." Robinson v. Borg, 918 F.2d 1387, 1390 (9th Cir.1990) (citing Smith v. Endell, 860 F.2d 1528, 1532 n. 3 (9th Cir.1988), cert. denied, 498 U.S. 981 (1990)), cert. denied, 502 U.S. 868 (1991).
 
 III
 
 20
 We conclude that a reasonable interrogating officer would have understood and that this interrogating officer did understand that Krysinski was requesting an attorney when he said, "Do I get to talk to a lawyer or something?" The officer clearly heard what he didn't want to hear. He said, "Do you want to right now?" but then he did not let Krysinski complete his response to that question. The officer precipitously left and did not return for some time. When he did come back, instead of implementing the request or referring to it in any way he turned confrontational and accusatory.
 
 
 21
 "If the individual states that he wants an attorney, the interrogation must cease until an attorney is present." Miranda v. Arizona, 384 U.S. 436, 474 (1966); see also Edwards v. Arizona, 451 U.S. 477 (1981). To require that questioning be cut off, a request for counsel may not be "ambiguous or equivocal," but must be "sufficiently clear[ ] that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." Davis v. United States, --- U.S. ----, ----, 114 S.Ct. 2350, 2355 (1994). However, the accused need not "speak with the discrimination of an Oxford don." Id. The words of the request will be "understood as ordinary people would understand them." Connecticut v. Barrett, 479 U.S. 523, 529 (1987). "Doubts must be resolved in favor of protecting the constitutional claim," and courts "give a broad, rather than a narrow, interpretation to a defendant's request for counsel...." Michigan v. Jackson, 475 U.S. 625, 633 (1986). Krysinski did not speak like an Oxford don but he let it be known what he wanted: a lawyer. The moment Krysinski asked for a lawyer, the officer changed tactics.
 
 
 22
 Significantly, Krysinski's request did not contain words of equivocation such as "might" or "maybe" or "perhaps." Decisions of this court have turned in part on the absence of such language. See, e.g., Smith v. Endell, 860 F.2d at 1529, 1531 (finding not equivocal: "Can I talk to a lawyer? At this point, I think maybe you're looking at me as a suspect, and I should talk to a lawyer. Are you looking at me as a suspect?"). Cf. Davis, --- U.S. at ----, 114 S.Ct. at 2353 ("Maybe I should talk to a lawyer" is equivocal); Robtoy v. Kincheloe, 871 F.2d 1478, 1479, 1482 (9th Cir.1989) ("maybe I should call my attorney" is equivocal).
 
 
 23
 In Robinson v. Borg, 918 F.2d at 1391, the accused said, "I have to get me a good lawyer, man. Can I make a phone call?" The court found this statement a clear request for counsel. Similarly, in United States v. De La Jara, 973 F.2d 746, 750 (9th Cir.1992), the accused said, "debo yo llamar a mi abogado," a Spanish phrase open to multiple translations, including "I should call my attorney," and "Should I call my attorney?" The court found that a reasonable person would have understood that the accused was asking for a lawyer. Id. at 752.
 
 
 24
 What transpires after the request for counsel cannot be used: "an accused's postrequest responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." Smith v. Illinois, 469 U.S. 91, 100 (1984) (emphasis in original). This rule exists to discourage the police, after the accused requests counsel, from asking additional questions "in the hope that the defendant might be induced to say something casting retrospective doubt on his initial statement...." Id. at 99.
 
 
 25
 It was error not to suppress Krysinski's confession. We reverse the district court's holding to the contrary.
 
 IV
 
 26
 The finding of error does not end our inquiry since improper admission of a confession is trial error, Arizona v. Fulminante, 499 U.S. 279, 310 (1991), and a federal court on habeas review may reverse a state court's constitutional trial error only if it had a "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, ----, 113 S.Ct. 1710, 1714 (1993). Since "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him," Fulminante, 499 U.S. at 296 (White, J., opinion of the Court), a careful and scrupulous review of the entire state court trial record must be undertaken to determine whether the improper admission of Krysinski's confession had a substantial and injurious effect on the verdict. The district court has not had an opportunity to do this. We remand so that it may do so.
 
 V
 
 27
 We affirm the district court's holding that Krysinski did not invoke the right to remain silent by his various requests to turn off the tape recorder, have the talk be "under the table," or have his father or coworker present.
 
 VI
 
 28
 We direct the district court to issue the writ of habeas corpus if it finds the error was not harmless, conditioned on the State having the right to retry the defendant within a reasonable period of time.
 
 
 29
 AFFIRMED in part, REVERSED in part, and REMANDED.
 
 RYMER, Circuit Judge, dissenting:
 
 30
 I dissent, because I believe this case is controlled by Davis v. United States, 512 U.S. ----, 129 L.Ed.2d 362, 114 S.Ct. ---- (1994). In context, Krysinski's statement here--"do I get to talk to a lawyer, or something"--isn't as clear an invocation of the right to counsel as was the statement in Davis itself--"maybe I should talk to a lawyer." Under the objective test we must apply, a reasonable officer could have believed that Krysinski's statement went to his right to talk to a lawyer, not to a request for one. Under Davis, if the invocation of a right to counsel is ambiguous, as it was here, questioning need not stop.
 
 
 31
 The cases upon which the disposition relies to reach a contrary conclusion pre-date Davis and, I believe, are no longer good law on whether the statements made there (let alone here) are ambiguous. There was, therefore, no error.
 
 
 32
 As I would affirm for these reasons, I would not reach the question of harmless error.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 On September 21, 1988, Sonja Samaniego was in her car when a man she did not recognize approached, pointed a gun at her, and demanded that she open the door. Samaniego let the man into her car but managed to escape
 On October 18, 1988, Marla Oliver accepted a ride home from Krysinski. A sexual encounter ensued in Krysinski's car. Oliver claimed Krysinski struck her, put a gun to her head, forcibly penetrated her vagina with his fingers, forced her to oral copulation, and strangled her until she lost consciousness. Krysinski claimed their sexual activity was consensual and that he brandished a gun and struck her to make her leave his car when they were done.