**Antonio L. BRADLEY, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

No. 2009–SC–000561–MR.

Supreme Court of Kentucky.

Dec. 16, 2010.

---

Daniel T. Goyette, Louisville Metro Public Defender, Elizabeth B. McMahon, As-

sistant Public Defender, Office of the Louisville Metro Public Defender, Louisville, KY, Counsel for Appellant.

Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Office of Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Chief Justice MINTON.

Antonio Bradley entered a conditional plea of guilty but mentally ill to one count of murder and one count of tampering with physical evidence. Bradley unsuccessfully sought to withdraw his conditional guilty plea, and the trial court sentenced him to twenty years' imprisonment for murder and five years' imprisonment for tampering with physical evidence, to run concurrently with each other but consecutively with a cumulative ten-year sentence Bradley received on two counts of attempted arson in another case. Bradley then filed this appeal as a matter of right.[1]

The main issue before us is whether custodial interrogation by the police violated Bradley's constitutional right to remain silent or his right to counsel—or both rights. After carefully examining the record, we conclude that the police improperly continued to interrogate Bradley after he had invoked his right to counsel. So we hold that the trial court erred by denying Bradley's motion to suppress his confes-

sion. Accordingly, Bradley's convictions must be vacated. Vacating those convictions renders moot Bradley's secondary arguments that the police improperly continued to question him after he invoked his right to remain silent and that the trial court erred by denying his motion to withdraw his conditional guilty plea.

The facts that led to the charges against Bradley are not germane to the limited issues presented on appeal. As we understand the underlying facts, Bradley was accused of murdering a person outside an apartment complex and, in a separate indictment, of pouring gasoline on the apartment complex's steps, ostensibly as a precursor to setting them afire. Because those underlying facts do not involve the limited issues before us, the parties appropriately do not focus on them.

■ Instead, the parties focus on the facts pertaining to the overarching question we must answer: whether the trial court erred by denying Bradley's motion to suppress his confession. In answering that question, we must bear in mind that "[w]hen reviewing a trial court's denial of a motion to suppress, we utilize a clear error standard of review for factual findings and a de novo standard of review for conclusions of law."[2]

Neither Bradley nor the Commonwealth takes issue with the trial court's findings of fact. So those findings of fact are conclusive.[3]

---

**1.** Ky. Const. § 110(2)(b). The murder and tampering with physical evidence convictions are the subject of this appeal; since we denied Bradley's motion to transfer, the attempted arson convictions are the subject of a matter of right appeal currently pending before the Court of Appeals. *See* Case No.2009–CA–001642. Because we do not know precisely what issues have been raised in that appeal, we do not express any opinion as to its proper resolution.

**2.** *Jackson v. Commonwealth,* 187 S.W.3d 300, 305 (Ky.2006).

**3.** Kentucky Rules of Criminal Procedure (RCr) 9.78.

The suppression hearing consisted solely of the testimony of Detective Williamson. Although the interrogation of Bradley apparently was videotaped, that videotape is not found in the record before us. The trial court reviewed that videotape and tran-

According to the testimony at the suppression hearing of Detective Williamson, Bradley was interviewed in the homicide unit office at police headquarters about the murder for which Bradley was ultimately charged and convicted. The police informed Bradley of his rights under *Miranda v. Arizona*,[4] including his right to the assistance of counsel and right to remain silent. Bradley signed a waiver-of-rights form before the interrogation.

During the interrogation, Detective Williamson misrepresented to Bradley the state of their investigation when he told him that there was a police officer waiting in the hall who could identify Bradley as having run away from the scene of the shooting. Williamson assured Bradley that he (Williamson) wanted to help him (Bradley).

■ As set forth by the trial court, the most crucial portion of the interrogation is as follows:

> **Williamson:** Well here's the deal. Well you know what, you're right, but it can be a lot worse. You stand up and you tell the truth. Be a man and take what's coming.... You can either be a cold hearted son-of-a-bitch or you can be a man about it with some remorse. Tony [Bradley] only you can make that decision. I cannot do that for you.
>
> **Bradley:** So I'm going to [be] sitting behind bars now?

> **Williamson:** Well you know what, it's your choice. You're going to do some time. I'm not going to sit here and lie to you. Okay.
>
> **Bradley:** A lot of time.
>
> **Williamson:** Well I don't know. I don't know the story. Why don't you run it by me and we'll look at it.
>
> **Bradley:** Well, you know, I need a lawyer or something.
>
> **Williamson:** Do what?
>
> **Bradley:** A lawyer.
>
> **Williamson:** That's your right. We read you your rights when you come [sic] in here. But I, I'm totally convinced you do what is the right thing and you'll be better off. You see where I'm at? You feel what I'm saying? Do you want to tell us? Just tell us what happened. It's nothing we can't get through, I mean there may be circumstances here that change this whole thing. Only you can tell us. It's a big step.
>
> **Bradley:** I did do it.
>
> **Williamson:** You did what. You shot him? Why?
>
> **Bradley:** Cause he was trying to get me.
>
> **Williamson:** What was he doing?
>
> **Bradley:** If I didn't get him he was going to get me.[5]

■ As the trial court noted, not every use of the word *lawyer* or *attorney* by a suspect is an invocation of the right to counsel.[6] Instead, precedent clearly holds

scribed it in relevant part. Because neither party takes issue with the trial court's transcription, we must assume the accuracy of the transcription.

**4.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**5.** The Commonwealth makes much in its brief of Detective Williamson's testimony at the suppression hearing that he believed that

Bradley had asked him (Williamson) if he (Bradley) should have an attorney. But it is undisputed, however, that Bradley stated he wanted a "lawyer or something"—he did not ask if he should have an attorney. So Williamson's testimony that Bradley asked if he should have an attorney is directly contrary to the plain language used by Bradley.

**6.** *See, e.g., State v. Gobert*, 275 S.W.3d 888, 892 (Tex.Crim.App.2009).

that the police must cease interrogating a suspect only if the suspect clearly and unambiguously asserts his or her right to counsel;[7] conversely, questioning may continue if the suspect only ambiguously or equivocally invokes his or her right to counsel.[8] Our task therefore is to determine if Bradley's invocation of the right to counsel was unequivocal, as Bradley argues, or was equivocal, as the circuit court concluded and the Commonwealth argues on appeal.[9]

In making that determination, we must remember that a suspect "need not speak with the discrimination of an Oxford don. . . ."[10] The suspect need only "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."[11] Stated another way, "[i]f reasonable minds could differ on whether a request for an attorney had been made, the language is perforce ambiguous or equivocal."[12] Because the determination of whether a purported invocation of the right to counsel involves an application of law to facts, our review is de novo.[13]

Had Bradley said only, "[w]ell, you know, I need a lawyer" then it would have been clear that he was invoking his right to counsel. The issue is rendered less clear by Bradley's added "or something" to his statement. Obviously, the generic phrase "or something" lends some superficial credence to the Commonwealth's claim that Bradley's request was equivocal. But taken in the relevant context of the questioning, we do not conclude that the phrase "or something" defeats the otherwise clear request for counsel.[14]

7. *See, e.g., Ragland v. Commonwealth,* 191 S.W.3d 569, 586 (Ky.2006) ("If at any time during a police interrogation the suspect has 'clearly asserted' his right to counsel, the interrogation must cease until an attorney is present."), citing *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Davis v. United States,* 512 U.S. 452, 458, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) ("But if a suspect requests counsel at any time during the interview, he is not subject to further questioning until a lawyer has been made available or the suspect himself reinitiates conversation.").

8. *Davis,* 512 U.S. at 459, 114 S.Ct. 2350 ("But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning. . . . Rather, the suspect must unambiguously request counsel.") (citations omitted).

9. Of course, a "threshold issue . . . in any case involving a perceived violation of *Miranda* rights . . . is whether the defendant was subject to a custodial interrogation at the time he claims he was denied any of his *Miranda* rights . . . because only statements made during custodial interrogations are subject to suppression pursuant to *Miranda." Jackson,* 187 S.W.3d at 305. But that threshold issue is not before us in the case at hand because it has not been raised in the parties' briefs.

10. *Davis,* 512 U.S. at 459, 114 S.Ct. 2350 (internal quotation marks omitted).

11. *Id.*

12. *Burnett v. Commonwealth,* No.2005–SC–000820–MR, 2008 WL 746615, at *6 (Ky. March 20, 2008) (Noble, J., concurring in result only).

13. *Jackson,* 187 S.W.3d at 306 ("Determining whether a specific exchange is a 'clear and unequivocal' request for an attorney pursuant to . . . *Davis v. United States* . . . requires an application of law to facts which must be reviewed *de novo* ").

14. In an analogous, but unpublished, opinion, the United States Court of Appeals for the Ninth Circuit concluded that a suspect's question that "[d]o I get to talk to a lawyer or something?" was an unequivocal invocation of the right to counsel. *Krysinski v. Rowland,*

Our conclusion is supported by the fact that Detective Williamson asked Bradley for clarification, to which Bradley responded simply "[a] lawyer." At that point, any ambiguity with regard to Bradley's desire to invoke his right to counsel was erased. And, crucially, Detective Williamson obviously believed that Bradley had invoked his right to counsel because he responded "[t]hat's your right."[15] Taken in full context, Detective Williamson's recognition that Bradley had a right to counsel is subject to no other reasonable interpretation other than Detective Williamson subjectively recognizing that Bradley had attempted to invoke his right to counsel.[16]

■ Of course, the test for whether a suspect has clearly invoked the right to

counsel is objective, not subjective.[17] But, when the entirety of the relevant exchange between Bradley and Detective Williamson is considered in context, we conclude that Detective Williamson's subjective acknowledgement that Bradley had invoked his right to counsel is also what an objective, reasonable person would have derived from Bradley's statements. After all, other than the odd phrase "or something," there is no tentativeness or doubt in the words Bradley used, as is commonly the case when a court deems a purported invocation of the right to counsel to be equivocal. For example, Bradley did not declare that "maybe" he needed a lawyer[18] or that he "might" need a lawyer,[19] nor did he ask Williamson if he believed that Bradley needed a lawyer.[20] In short, Bradley's

89 F.3d 845, 1996 WL 218172, at *2 (9th Cir.1996) (Table case, text available on Westlaw) ("We conclude that a reasonable interrogating officer would have understood and that this interrogating officer did understand that Krysinski was requesting an attorney when he said, 'Do I get to talk to a lawyer or something?'"). Since Bradley's statement was declarative, not interrogatory, Bradley's statement is even more clearly an invocation of his right to counsel.

15.  See, e.g., Robinson v. State, 286 Ga. 42, 684 S.E.2d 863, 865 (2009) (relying on detective's response, "You said you would like a lawyer" to suspect's request for attorney to find no ambiguity in suspect's invocation of right to counsel).

16.  Williamson testified that he did not believe that Bradley had invoked his right to an attorney and that he would have ceased questioning Bradley if he (Williamson) believed that Bradley had invoked that right. But Williamson's testimony on that point cannot easily be squared with his "[t]hat's your right" response to Bradley's request for an attorney. In short, an objective analysis of this dialogue leads to the conclusion that Williamson knew, or reasonably should have known, that Bradley had invoked his right to an attorney.

17.  Davis, 512 U.S. at 458–59, 114 S.Ct. 2350 ("The applicability of the rigid prophylactic rule ... [preventing further questioning once

a suspect invokes his or her right to counsel] requires courts to determine whether the accused *actually invoked* his right to counsel. To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry.") (citations and quotation marks omitted).

18.  See, e.g., id. at 462, 114 S.Ct. 2350 (affirming lower courts' conclusion that suspect's statement that "[m]aybe I should talk to a lawyer" was not unequivocal invocation of right to counsel).

19.  See, e.g., United States v. Zamora, 222 F.3d 756, 766 (10th Cir.2000) (affirming trial court's conclusion that suspect's statement that "I might want to talk to an attorney" not an unequivocal invocation of right to counsel); Yenawine v. Commonwealth, No.2003–SC–0283–MR, 2005 WL 629007 at *3 (Ky. March 17, 2005) (suspect stating to police, "I *might* need to speak with my lawyer about whether I should talk with you" and handing an attorney's business card to authorities not an unequivocal invocation of right to counsel).

20.  See, e.g., Mueller v. Angelone, 181 F.3d 557, 573–74 (4th Cir.1999) (suspect's question to police, "Do you think I need an attorney here?" deemed not to be an unequivocal invocation of right to counsel). See also Dean v.

comments bear none of the commonly encountered signs of equivocation that would support a conclusion that the suspect has not unequivocally invoked his right to counsel.

▆▆▆▆ In addition to finding that Bradley had not unequivocally invoked his right to counsel, the trial court concluded that Bradley had later waived his right to counsel again when he responded to Williamson's continued effort to induce Bradley to confess. But law enforcement authorities must cease interrogating a suspect once that suspect has invoked the right to counsel. Only the suspect may re-initiate dialogue with the authorities; the authorities cannot continue to cajole or otherwise induce the suspect to continue to speak without first affording the suspect an attorney.[21]

In the case at hand, once Bradley invoked his right to counsel, Williamson was required to cease in his efforts to get Bradley to speak (*i.e.*, confess), without first affording Bradley the services of an attorney. Williamson, however, continued to beseech Bradley to speak—even though Bradley had invoked his right to counsel—

without honoring Bradley's request for an attorney.

Obviously, Williamson's efforts were successful because Bradley soon confessed. But that confession cannot be used against Bradley because the confession was not made at Bradley's initiation. Instead, the confession was the result of Williamson improperly continuing to question Bradley once Bradley had invoked his right to counsel. So the fact that Bradley made incriminating statements to Williamson after Bradley had invoked his right to counsel cannot defeat the initial, unequivocal request for counsel. When that request occurred, Williamson erred by refusing to stop his interrogation of Bradley.

The confession and other statements Bradley made after invoking his right to counsel could only be considered to determine if Bradley had, after invoking his right to counsel, waived that right by speaking further to the police without having been afforded the services of counsel.[22] But the only factor that seems to support such a waiver is the existence of Bradley's statements themselves. And, as previously discussed, those statements were im-

---

*Commonwealth*, 844 S.W.2d 417, 419 (Ky. 1992) (suspect's question to police, "should I have somebody here?" not unequivocal invocation of right to counsel).

**21.** *Edwards*, 451 U.S. at 484–85, 101 S.Ct. 1880 ("We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police* .... [I]t is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel.") (emphasis added); *Smith v. Illinois*, 469 U.S. 91, 98, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984) ("*Edwards* set forth a bright-line rule that *all* questioning

must cease after an accused requests counsel. In the absence of such a bright-line prohibition, the authorities through badger[ing] or overreaching—explicit or subtle, deliberate or unintentional—might otherwise wear down the accused and persuade him to incriminate himself notwithstanding his earlier request for counsel's assistance.") (citations and quotation marks omitted).

**22.** *Smith*, 469 U.S. at 98, 105 S.Ct. 490 ("Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked. Invocation and waiver are entirely distinct inquiries, and the two must not be blurred by merging them together.").

properly obtained because they were in response to further statements and questions by Williamson and, thus, were not independently voluntary statements made of Bradley's volition. It is clear that a finding of a valid waiver cannot be based solely on the fact that a suspect "responded to further police-initiated custodial interrogation" after having validly invoked his or her right to counsel.[23] Because Bradley's incriminating statements were made after he had invoked his right to counsel, because those statements were made in response to further prodding from Williamson, and because there appear to be no other factors to support a conclusion that Bradley had waived his right to counsel shortly after invoking it, we cannot agree with the trial court that Bradley's statements are a result of his having waived his right to counsel.

In short, we conclude that Bradley unequivocally invoked his right to counsel when he stated that he needed to talk to a "lawyer or something" and then repeated the phrase "a lawyer" when asked to clarify his request. So all questioning of Bradley should have stopped until such time as Bradley was provided an attorney. Because questioning did not stop, the trial court erred by denying Bradley's motion to suppress. This means that Bradley's convictions for murder and tampering with physical evidence must be vacated, and this case remanded to the trial court with instructions to grant Bradley's motion to suppress.

For the foregoing reasons, Antonio Bradley's convictions for murder and tampering with physical evidence are vacated

and this matter is remanded to the circuit court with instructions to grant the motion to suppress and for any further proceedings consistent with this opinion.[24]

All sitting. All concur.

---

23. *Edwards*, 451 U.S. at 484, 101 S.Ct. 1880 ("we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initi-

ated custodial interrogation even if he has been advised of his rights.").

24. Since Bradley's convictions are being reversed, his argument that the trial court should have permitted him to withdraw his guilty plea is moot.