*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KIMORA LAUNMEI HODGES,

        Defendant-Appellant.

UNPUBLISHED
May 30, 2024

No. 368197
Macomb Circuit Court
LC No. 2022-003050-FC

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

REDFORD, P.J. (*concurring in part and dissenting in part*).

I concur with the majority's opinion that the trial court did not clearly err in concluding that defendant's initial statements regarding the need for counsel did not constitute a clear and unambiguous request for counsel. However, I respectfully dissent from the remainder of the majority's opinion. I would affirm the trial court's holding that defendant's statement, "I need a lawyer or something. I need a lawyer", given the context and nature of the interview when those words were stated, was an unclear and ambiguous invocation of her right to counsel. I likewise conclude, that even if defendant unequivocally invoked her right to counsel with those words, she reinitiated the interview.

Noting that our review of a lower court's factual findings is limited to clear error, *People v Daoud*, 462 Mich 621, 629-630; 614 NW2d (2000), I do not believe that the trial court was clearly erroneous when it held that defendant did not unequivocally invoke her right to counsel or, alternatively, that defendant reinitiated the interview after review of both the police interview and the testimony at the *Walker* hearing.[1] Therefore, I would affirm the trial court's order denying defendant's motion to suppress.

The statement of facts and standard of review were accurately reported by the majority.

---

[1] *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965).

## I. CONTROLLING LEGAL PRINCIPLES

In *Edwards v Arizona*, 451 US 477, 484-485; 101 S Ct 1880; 68 L Ed 2d 378 (1981), the Supreme Court held that when an accused invokes her right to have counsel present during a custodial interrogation, the accused is not subject to further interrogation by the police authorities until counsel is made available to her unless the accused initiates further communication with the police authorities. However, a request for counsel must be unequivocal. *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005), citing *Davis v United States*, 512 US 452, 457; 114 S Ct 2350; 129 L Ed 2d 362 (1994). "[I]f a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis*, 512 US at 459. Following an ambiguous or equivocal statement, "it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Id*. at 461. However, the officer has no obligation to cease questioning the defendant. *Id.* at 461-462. Whether a defendant has unequivocally invoked the right to counsel is an objective inquiry. *Id*. at 458-459.

## II. INVOCATION OF THE RIGHT TO COUNSEL

In reaching the conclusion that defendant did not unequivocally invoke her right to counsel, the trial court relied both on the video recording of the police interview and Sergeant Houstoulakis's testimony from the *Walker* hearing. The trial court explained:

> Defendant's statement, "I just need a lawyer or something," was not clear or unambiguous. The statement on one hand seeks a lawyer or something and, on the other, indicates a "need" for a lawyer. Such a statement is different than a suspect's express, unambiguous, and present request for a lawyer. See *People v Mesman*, unpublished per curiam opinion of the Court of Appeals, issued October 13, 2009 (Docket No. 285487), p 3 ("While defendant's statements regarding his need for legal representation can reasonably be interpreted as a present demand for counsel, they are also equally susceptible to the interpretation by [a] trial court that although defendant indicated the need to procure a lawyer in the future, he was willing to continue the interview.")
>
> Moreover, this Court notes that Sergeant Houstoulakis ceased questioning about the incident in question after Defendant made her second statement. Rather than pursue more questioning about the incident involving the minor victim, Sergeant Houstoulakis sought clarification regarding Defendant's request for counsel, as evidenced by Defendant's testimony. [alteration in original.]

The majority concludes that any ambiguity in the phrase "I just need a lawyer or something" was removed because defendant subsequently declared, "I need a lawyer." Divorced from the context of the police interview, the statement, "I need a lawyer," appears to be an unequivocal declaration. However, we must review the statement in light of the circumstances in which defendant made it. *Davis*, 512 US at 458-459.

Defendant made the statement approximately two hours into an emotionally charged interview. Crying into her hands with her elbows tucked into her knees, defendant stated in a single breath, "I just need a lawyer or something. I need a lawyer." The full statement was spoken quickly and through sobs. The use of the hedge word "something" indicated that defendant was voicing out loud her contemplation of her potential need for counsel. The equivocal nature of this statement was not clarified by her breathless statement, "I need a lawyer," in the same string of thought. Given this context, defendant's statement regarding her need for counsel can be reasonably interpreted as a present demand for counsel; however, it is equally susceptible to the interpretation that defendant had a need to retain a lawyer in the future. See *id*.

The context of this statement is distinct from the case relied on for its persuasive value by the majority, *Bradley v Commonwealth*, 327 SW3d 512 (Ky, 2010). In that case, the Kentucky Supreme Court acknowledged that the phrase "I need a lawyer or something" was an equivocal assertion, but, in that case, any ambiguity was removed from the statement when the defendant responded, "A lawyer," to a detective's immediate clarifying question. *Id*. at 516. In that case, the declaration, "A lawyer" cleared up any possible ambiguity because it was made immediately after the detective asked a clarifying question regarding the initial statement. Although similar phrases were uttered in each case, defendant's use of the phrase, "I need a lawyer," in this case was not responsive to a clarifying question and did not provide the same clarification.

The trial court's conclusion that the statement was ambiguous is supported by the fact that Sergeant Houstoulakis ceased questioning defendant about the incident and asked a clarifying question. Immediately after defendant's statement, Sergeant Houstoulakis stated, "Okay. You don't wanna answer any more questions?" The majority acknowledges that the trial court did not clearly err in concluding that this was a clarifying question as opposed to a statement. However, the majority asserts that Sergeant Houstoulakis response of "okay" demonstrated an understanding that defendant unequivocally requested counsel. I do not take away the same conclusion regarding the use of this term as the majority. Instead, the use of the term "okay" before asking a clarifying question was an affirmation that he heard defendant's statement. The fact that he immediately followed it up with a question casts doubt on the majority's conclusion that Sergeant Houstoulakis knew that defendant unequivocally invoked her right to counsel.

Likewise, I disagree with the majority's conclusion that Sergeant Houstoulakis never expressly asked defendant if she wanted an attorney before continuing the interview when he asked "Okay. You don't wanna answer any more questions?" "The assertion of the right to counsel during a custodial interrogation is a per se invocation of the right to remain silent." *People v Clark*, 330 Mich App 392, 416; 948 NW2d 604 (2019). Defendant was advised at the beginning of the interview that she had the right to talk to an attorney and that if she decided to exercise this right, she did not have to answer any questions or make any statements. Sergeant Houstoulakis's question addressed this exact expectation. This question was aimed at assessing whether defendant invoked her right to counsel rather than continuing the interrogation.

Moreover, following the statement and Sergeant Houstoulakis's clarifying question, there is no indicated that defendant refused to answer further questions until she was provided the opportunity to consult with counsel. In addition to the question, "Okay. You don't want to answer any more questions?" Sergeant Houstoulakis stated, "Kimora, listen, I'm here for you, alright." Sergeant Houstoulakis began to make another statement, starting with the term, "I'm," but was

-3-

interrupted by defendant, who interjected, "That's not what was supposed to happen." This interjection was entirely unresponsive to Sergeant Houstoulakis's request for clarification. Instead, she expressed a desire to continue the interview by steering the conversation back to previous topics discussed in the two hours before her equivocal statement.

Even after defendant reengaged the topic of the underlying offense, Sergeant Houstoulakis twice more asked defendant if she did not want to talk anymore. Defendant continued to speak about the underlying incident and affirmed that she wanted to talk. I perceive none of the badgering or abuse that *Edwards* was designed to prevent in this colloquy. *Michigan v Harvey*, 494 US 344, 350; 110 S Ct 1176; 108 L Ed 2d 293 (1990) (explaining that *Edwards* "established another prophylactic rule designed to prevent police from badgering a defendant into waiving [her] previously asserted *Miranda* rights").

Although I agree with the majority that Sergeant Houstoulakis's subjective understanding of the interview was not determinative under an objective inquiry, see *Davis*, 512 US at 458-459, his subjective understanding of the interview comports with the objective understanding of a reasonable officer in light of the circumstances. Defendant made an equivocal and ambiguous statement, leading Sergeant Houstoulakis to ask a clarifying question. Review of this record did not leave me with a definite and firm conviction that the trial court made a mistake. See *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996). Accordingly, I would hold that the trial court did not clearly err in relying on Sergeant Houstoulakis's testimony and the video of the interview to conclude that defendant did not unequivocally invoke her right to counsel.

## III. REINITIATION

The trial court alternatively held that even if defendant's statement was unequivocal, she reinitiated the interview by shifting the topic back to the underlying offense. In support of this holding, the trial court explained:

> Lastly, even if this Court were to find Defendant invoked her right to counsel, she nonetheless reinitiated the interrogation and admitted as such. As the testimony of Sergeant Houstoulakis and Defendant provides, Defendant responded to his clarifying questions about her purported request for counsel by speaking about anger and how the incident with the minor victim was not supposed to happen. Indeed, Sergeant Houstoulakis told Defendant he was there for her but only during the course of asking those same clarifying questions. After this back and forth, Defendant agreed to move forward with questioning through her answers to Sergeant Houstoulakis questions. [citation omitted.]

"[W]hen an accused has invoked [her] right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that [s]he responded to further police-initiated custodial interrogation even if [s]he has been advised of [her] rights." *Edwards*, 451 US at 484. Instead, courts may admit an accused's "responses to further questioning only on finding that [s]he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right [s]he had invoked." *Clark*, 330 Mich App at 419 (quotation marks and citation omitted). In a four-justice plurality, the Supreme Court explained that an accused reinitiates further discussion with the police when she "evince[s] a willingness and

-4-

a desire for a generalized discussion about the investigation . . . ." *Oregon v Bradshaw*, 462 US 1039, 1045-1046; 103 S Ct 2830; 77 L Ed 2d 2830 (1983). Absent direct interrogation, a police officer does not violate an accused's Fifth Amendment right to counsel unless he employs words or actions that he "should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v Innis*, 446 US 291, 301; 100 S Ct 1682; 64 L Ed 2d 297 (1980).

The majority concludes that there is no dispute that Detective Houstoulakis did not cease questioning defendant after defendant's statement and concludes that defendant did not independently reinitiate contact with Sergeant Houstoulakis. Instead, the majority explains that she responded to Sergeant Houstoulakis's question about whether she no longer wished to speak to him and his request that she listen to his statement that he was there for her. I disagree that defendant's reinitiation was in response to police interrogation.

Before defendant's statement about an attorney, defendant and Sergeant Houstoulakis discussed the child's injuries and whether defendant acted out of anger in the underlying incident. After defendant stated "I just need a lawyer or something," Sergeant Houstoulakis ceased discussing anger and shifted to clarifying whether defendant wanted to stop the interview, "You don't want to answer any more questions? Kimora, listen I'm here for you, alright." Defendant interrupted Sergeant Houstoulakis, "That's not what was supposed to happen." Sergeant Houstoulakis asked defendant, "What do you think 'that' is?" Defendant responded, "You all just want me to blame." The exchange continued with Sergeant Houstoulakis asking again if defendant wanted to stop the interview but also explaining that he was present as a neutral party in the situation. After additional exchanges in which defendant asserted she was not lying, Sergeant Houstoulakis asked defendant a third time if defendant wanted to talk or be done with the conversation, to which defendant responded, "Talk."

Sergeant Houstoulakis's inquiry at the start of this exchange was aimed at clarifying whether defendant wanted to stop the interview rather than eliciting an incriminating response. See *id*. Instead of answering Sergeant Houstoulakis's clarifying question, defendant raised the topic of the underlying incident. Defendant was not subject to "express questioning" or its "functional equivalent" when Sergeant Houstoulakis asked the initial clarifying question. See *id*. at 302-303. Admittedly, after the initial attempt at clarification and reinitiation, Sergeant Houstoulakis's inquiry became more muddled. He continued to ask clarifying questions but also played on her sympathy by asserting that the interview was a courtesy for defendant to "get it off your chest." In my review of this record, defendant reinitiated the conversation by readdressing topics from earlier in the interrogation. As a consequence, I see no clear error in the trial court's holding that defendant reinitiated the conversation after the supposed invocation of the right to counsel.

Because the trial court's conclusions were not clearly erroneous, I would affirm the trial court.

/s/ James Robert Redford