RENDERED: JUNE 21, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0177-MR

REX MELTON                                                          APPELLANT

v.
APPEAL FROM TAYLOR CIRCUIT COURT
HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 89-CR-00069-001

COMMONWEALTH OF KENTUCKY                                            APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND MCNEILL, JUDGES.

CALDWELL, JUDGE: Rex Melton ("Melton") appeals from the denial of his

motion for immediate release from custody. We affirm.

## FACTS

In early 1990, following a jury trial, Melton was convicted of first-

degree arson and first-degree assault for an incident which occurred in September

1989. As summarized by the trial court: "The allegations at trial were that the

Defendant [Melton] and a co-defendant severely beat the complaining witness with a bumper jack, confined him to the trunk of a car, and then attempted to burn the car while the victim was inside."

Melton was sentenced to a total maximum term of fifty years' imprisonment – consisting of a thirty-year maximum term of imprisonment for first-degree arson to run consecutively with a twenty-year maximum term of imprisonment for first-degree assault.

Melton filed motions for relief pursuant to RCr[1] 11.42 and CR 60.02.[2] The trial court denied these motions. And this Court affirmed the denial of these motions in 1997 and 2009, respectively.[3]

Melton later filed another motion for post-judgment relief, arguing he was erroneously designated as a violent offender and should have been eligible for parole after serving twenty percent of his sentence, rather than fifty percent under a

---

[1] Kentucky Rules of Criminal Procedure.

[2] Kentucky Rules of Civil Procedure.

[3] *Melton v. Commonwealth*, No. 2008-CA-001271-MR, 2009 WL 485109 (Ky. App. Feb. 27, 2009) (unpublished) (affirming the denial of CR 60.02 relief and noting this Court's affirming the denial of RCr 11.42 relief in 1997).

prior version of KRS[4] 439.3401. The trial court denied this motion. And this Court affirmed the trial court's denial of relief in the summer of 2015.[5]

In October 2015, Melton was released on parole. He reported regularly to his parole officer for the first few years after his release on parole. However, Melton stopped reporting to his parole officer in 2022. According to Melton, he believed he was no longer on parole as of late 2020 or early 2021.

In late October 2022, Melton was arrested on a warrant for parole violation for absconding from supervision. (The warrant had been issued in March 2022.) In early November 2022, Melton filed a motion with the trial court claiming he was illegally incarcerated and requesting his immediate release from custody. The trial court's docket notes state this motion was initially denied in mid-November without further elaboration – perhaps due to failure to exhaust administrative remedies.

Despite any apparent earlier failure to exhaust administrative remedies, Melton received a letter from the Department of Corrections in early December 2022 stating Melton had exhausted his administrative remedies at that point. The letter also stated that Melton was classified as a violent offender and

---

[4] Kentucky Revised Statutes.

[5] *Melton v. Commonwealth*, No. 2013-CA-001982-MR, 2015 WL 3533217 (Ky. App. Jun. 5, 2015) (unpublished).

that as of the date of Melton's release from parole in 2015, the maximum expiration date for his sentence had been in November of 2040. The letter also indicated that, following Melton's arrest for parole violation, his new maximum expiration date was in November 2047 as the time Melton spent on parole since October 2015 would not be credited toward completion of his sentence. It further stated: "You are not eligible for release until your minimum expiration date if you remain in custody. If released on parole again, you will remain on parole until your maximum expiration date."

Other documentation in the record shows Melton received notice of a final parole revocation hearing before the Parole Board on December 12, 2022. On December 13, 2022, the trial court entered into the record informal notes stating Melton's parole revocation hearing had occurred the day before and setting Melton's motion to be released from custody for a January 2023 hearing.

The record indicates the trial court conducted a hearing on Melton's motion for release from custody in mid-January 2023. The trial court entered a written order denying Melton's motion for immediate release from custody in late January 2023. In its written order, the trial court determined that Melton was still on parole "at the time of his absconding and when served with the parole violation warrant." The trial court did not address the maximum expiration date for Melton's sentence following parole revocation proceedings in its written order. It

-4-

simply determined Melton was not entitled to immediate release since Melton was still on parole when Melton failed to report to his parole officer in 2022 and when the parole violation warrant issued.

Shortly after the trial court denied Melton's motion for immediate release, Melton filed his *pro se* appeal with this Court.

## ANALYSIS

**We Decline to Sanction Melton for Failing to Comply with Preservation Statement Requirements in Appellate Briefing Rules, but We Confine Our Review to Those Issues Clearly Raised to and Ruled Upon by the Trial Court**

RAP[6] 32(A)(4) requires that appellant briefs "shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." An argument must be raised to the trial court to be preserved for review. *See MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014) ("[T]he critical point in preservation of an issue remains:  was the question fairly brought to the attention of the trial court.").

Melton's appellant brief does not contain the preservation statement required by RAP 32(A)(4) – which applies to *pro se* appellants as well as those

---

[6] Kentucky Rules of Appellate Procedure.

represented by attorneys.[7] *See Prescott v. Commonwealth*, 572 S.W.3d 913, 919 (Ky. App. 2019) (holding *pro se* litigants are subject to appellate briefing rules then contained in Kentucky Rules of Civil Procedure; though declining to strike brief or dismiss appeal for failure to comply with appellate briefing rules, confining review to "those portions of Prescott's [appellant's] arguments supported by careful and correct citation to the record").[8]

We decline to impose any sanctions for failure to comply with preservation statement requirements or other appellate briefing rules at the present time. But we remind Melton for future reference that he is responsible for complying with appellate briefing rules even when proceeding *pro se*.

Though we decline to impose sanctions for the failure to comply with preservation statement requirements or other appellate briefing rules, we will not

---

[7] *See, e.g.*, *Merriweather v. Commonwealth*, No. 2022-CA-1097-MR, 2023 WL 7930395, at *1 n.2 (Ky. App. Nov. 17, 2023) (unpublished) (noting *pro se* appellant failed to comply with preservation statement requirement in RAP 32(A)(4), though opting to ignore the deficiency and proceed with reviewing the case). We recognize this unpublished case is not binding authority. *See* RAP 41(A). Nonetheless, we cite this case simply as one example in which this Court has applied RAP 32(A)(4)'s preservation statement requirement and other appellate briefing rules to *pro se* appellants. Due to the recent adoption of our Rules of Appellate Procedure in 2023, there appears to be no published case applying RAP 32(A)(4) to *pro se* appellants yet. However, the nearly identical preservation statement requirement in former CR 76.12(4)(c)(v) was frequently applied to *pro se* appellants in published precedent such as *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010).

[8] In addition to not having a preservation statement, Melton's briefs fail to comply with other requirements of our appellate briefing rules. *See, e.g.*, RAP 32. In the interest of brevity, we decline to identify or discuss all these deficiencies. But we direct Melton's attention to our appellate briefing rules in our Rules of Appellate Procedure, especially RAP 31 and 32, for future reference since we may not be so inclined to be so lenient in the future.

address every issue raised by Melton in his appellate briefs. Instead, we simply review the issues ruled upon by the trial court. For example, we review the trial court's determination that Melton was on parole when Melton absconded and when the parole violation warrant was issued. But we do not address Melton's maximum expiration date for his sentence following parole violation proceedings because the trial court did not rule on this issue in its written order. "As an appellate court, we review judgments; we do not make them." *Turner v. Turner*, 672 S.W.3d 43, 56 (Ky. App. 2023) (quoting *Klein v. Flanery*, 439 S.W.3d 107, 122 (Ky. 2014)).

**Despite Lack of Preservation Statement, We Review the Trial Court's Ruling** *De Novo*

When an appellant fails to provide a statement identifying if and how an issue was preserved for review, an appellate court may treat the issue as unpreserved and thus may review only for palpable error resulting in manifest injustice. *Ford v. Commonwealth*, 628 S.W.3d 147, 155 (Ky. 2021) (citing RCr 10.26). However, as Melton raised the issues on appeal to the trial court based on our review of the record, we decline to review solely for palpable error.

Instead, we review the issues ruled upon by the trial court under the applicable standard of review despite the lack of preservation statement. Because the trial court's determination of whether Melton remained on parole at the time of the alleged parole violation primarily involves its interpretation of statutes and

application of the law to the facts, we review this matter *de novo* (without deference). *See Commonwealth v. Love*, 334 S.W.3d 92, 93 (Ky. 2011) (issues of statutory interpretation reviewed *de novo*); *Bradley v. Commonwealth*, 327 S.W.3d 512, 516 (Ky. 2010) (application of law to facts reviewed *de novo*).

However, even reviewing the matter without any deference to the trial court, we discern no error in its determination that Melton remained on parole at the time of his failure to report and of the issuance of the parole violation warrant.

**Trial Court Correctly Determined that Melton Remained on Parole When He Failed to Report and When the Parole Violation Warrant Was Issued**

Melton contends that he was no longer on parole on or before early 2021. He notes the underlying crime had occurred in September 1989 and that he received a fifty-year prison sentence in April 1990. He asserts his maximum expiration date for his sentence was on or around November 23, 2040. He further asserts he was entitled to nearly twenty years' good time credit while incarcerated or on parole. And he suggests that if one subtracts nearly twenty years from his maximum expiration date of November 2040, that the minimum expiration date for his sentence would be about January 2021.

Melton claims his parole officer violated legislative intent by not accepting his assertion that he was already off parole by some point in 2021. He also claims a clerk at the courthouse did not find him among those listed as being on parole on one occasion in 2021 – although he cites to no evidence supporting

this assertion in the record. *See* RAP 32(A)(3)-(4) (requiring ample references to specific locations in the record to support factual summaries and arguments in appellant briefs).

Melton also refers – albeit without specific citations to the record in his briefs – to a chain of emails between his parole officer and a corrections official which is included in the record. However, nothing shows that Melton had received a final discharge from parole.

In the emails in the record, Melton's parole officer notes Melton's Payee Account was put on hold in late 2021. The other official could not explain why the Payee Account had been closed, but stated he opened it back up. The parole officer asked the other official about Melton's assertion that he was off parole as of late 2021. But the other official told Melton's parole officer that it was not true that Melton was already off parole because Melton was subject to KRS 439.354(2) as a violent offender and therefore remained on parole until the maximum expiration date.

Not only do the emails not conclude that Melton was discharged from parole, but there is also no documentation of the parole board issuing a final discharge of Melton's parole in the record. *See generally* KRS 439.354 (setting

forth circumstances in which the parole board may or shall issue a final discharge

from parole).[9]

Despite the lack of documentation of being finally discharged from

parole, Melton argues that he was entitled to final discharge from parole as of the

minimum expiration date for his sentence if he had not been paroled, citing KRS

439.354(1). He contends KRS 439.354(1) applies to him, rather than KRS

439.354(2) so that he should have been paroled as of the minimum expiration date

of his sentence (early 2021 according to Melton). We disagree.

KRS 439.354 – which was last amended in 2009 well before Melton

was paroled in 2015 – states:[10]

> (1) Except as provided in subsection (2) of this section,
>     when any paroled prisoner has performed the
>     obligations of his or her parole during his or her
>     period of active parole supervision the board may, at
>     the termination of such period to be determined by the

---

[9] We recognize that the trial court did not discuss such matters as the parole officer's emails and the lack of documentation of a final discharge from parole in its written order. However, even if the trial court's reasoning was somewhat different from ours, we have the authority to affirm on alternate grounds supported by the record. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 495-96 (Ky. 2014).

[10] The Commonwealth also argues that, even assuming the version of KRS 439.354 in effect at the time of the 1989 assault/arson crimes applied, Melton was not entitled to immediate release under this version either. That version of KRS 439.354 (as enacted in 1962) did not distinguish between violent and non-violent offenders. Instead, it simply provided in pertinent part: "Unless ordered earlier by the board, a final discharge shall be issued when the prisoner has been out of prison on parole a sufficient period of time to have been eligible for discharge from prison by maximum expiration of sentence had he not been paroled, provided before this date he had not absconded from parole supervision or that a warrant for parole violation had not been issued by the board." (Record ("R."), p. 66 back of page). Assuming *arguendo* this version of KRS 439.354 would apply, Melton would still have not been entitled to discharge from parole at the time of his absconding and parole violation warrant in 2022.

board, issue a final discharge from parole to the prisoner. Unless ordered earlier by the board, a final discharge shall be issued when the prisoner has been out of prison on parole a sufficient period of time to have been eligible for discharge from prison by minimum expiration of sentence had he or she not been paroled, provided before this date he or she had not absconded from parole supervision or that a warrant for parole violation had not been issued by the board.

(2) When any paroled prisoner classified as a violent offender pursuant to KRS 439.3401, or registered as a sex offender pursuant to KRS 17.500 to 17.580, has performed the obligations of his or her parole, the board shall issue a final discharge from parole to the prisoner when the prisoner has been out of prison on parole a sufficient period of time to have been eligible for discharge from prison by maximum expiration of sentence had he or she not been paroled, provided before this date he or she had not absconded from parole supervision or that a warrant for parole violation had not been issued by the board.

Melton claims that since the underlying criminal offense occurred before July 15, 1998, that KRS 439.3401 (parole for violent offenders) does not apply to him. He cites KRS 439.3401(6) which states: "This section shall apply only to those persons who commit offenses after July 15, 1998." However, KRS 439.3401(7) provides: "For offenses committed prior to July 15, 1998, the version of this statute in effect immediately prior to that date shall continue to apply."

The version of KRS 439.3401 which was in effect immediately prior to July 15, 1998, was the version as amended in 1992. And KRS 439.3401 (as

-11-

amended in 1992) defined violent offenders as including those convicted of Class A felonies. Furthermore, even the version of KRS 439.3401 in effect as of the commission of the underlying crimes in 1989 – the statute as originally enacted in 1986 – defined violent offenders as including those convicted of Class A felonies.

Melton was convicted of the Class A felony of first-degree arson, KRS 513.020(2), among other crimes. So, Melton was a violent offender as defined by KRS 439.3401 – even as defined pre-1998 and at the time of the underlying arson/assault conduct in 1989. Thus, Melton was not entitled to a final discharge from parole at the minimum expiration date for his sentence. KRS 439.354(1)-(2).

Instead, as a violent offender, Melton was not entitled to a final discharge from parole until the maximum expiration date for his sentence had passed **and only if** there had been no absconding from supervision or issuance of a parole violation warrant before the maximum expiration date. KRS 439.354(2).

The maximum expiration date for Melton's sentence had not passed when he absconded from supervision and the probation violation warrant was issued in 2022. Thus, pursuant to KRS 439.354(2), the trial court correctly determined that Melton – a violent offender – remained on parole when Melton absconded from supervision and the parole violation warrant was issued.

Therefore, the trial court did not err in denying Melton's request for immediate release from custody.

Further arguments or issues discussed in the parties' briefs have been determined to lack merit or relevancy to our resolution of this appeal.

## CONCLUSION

For the foregoing reasons, we AFFIRM the trial court's judgment.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Rex Melton, *pro se*
Campbellsville, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Todd D. Ferguson
Assistant Attorney General
Frankfort, Kentucky