*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 30, 2024

Plaintiff-Appellee,

v

No. 368197
Macomb Circuit Court
LC No. 2022-003050-FC

KIMORA LAUNMEI HODGES,

Defendant-Appellant.

Before: REDFORD, P.J., and CAMERON and LETICA, JJ.

PER CURIAM.

Defendant appeals by leave granted[1] the trial court's order denying her motion to suppress evidence. Defendant was charged with first-degree felony murder, MCL 750.316(1)(b), and first-degree child abuse, MCL 750.136b(2). We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

This case arises from the death of KM, a 22-month old child. Defendant was babysitting KM when he suffered a severe head injury that resulted in his death.

At about 2 a.m. on June 14, 2022, KM was taken to the hospital. The Roseville Police Department became involved and investigated the matter. At 7:50 a.m., the police arrested defendant. Around 10:34 a.m., Roseville Police Department Detective Menas Houstoulakis and Detective-Sergeant Alison Rieser began interrogating defendant. Their interview was videotaped and ended at about 1:25 p.m.

---

[1] See *People v Hodges*, unpublished order of the Court of Appeals, entered November 29, 2023 (Docket No. 368197).

After being bound over to circuit court, defendant filed a motion to suppress the statements she made to the police during the interrogation. Defendant argued that when the police reviewed her *Miranda*[2] rights with her, she said that she "would speak with the officers but 'only if [KM's mother] were to press charges, would [she] want a lawyer' . . . ." The officers told her that "they were investigating the case." For approximately two hours, the officers sought to have defendant admit that she had abused KM. At that point, defendant unequivocally stated, "I need a lawyer." But, rather than honoring defendant's request, Detective Houstoulakis, the only officer present when defendant made this statement, continued speaking to defendant. He told her that he was " 'here for [her],' " and, later, he said that he was " 'doing this for [her] to get it off [her] chest.' " Defendant asked the trial court to hold an evidentiary hearing in order to produce testimony from the officers.

The prosecution responded to defendant's motion. It argued that defendant had not unequivocally requested an attorney. Defendant's initial mention of an attorney was conditional and insufficient to invoke her right to counsel. Defendant's second mention of counsel was "I just need a lawyer or something. I need a lawyer." The prosecution argued that this was not an unequivocal request for counsel, "but instead [defendant] contemplating, out loud, about the situation she found herself in. Since [defendant's] statement is capable of being understood multiple ways and subject to multiple interpretations, the statement is, by definition, both ambiguous and equivocal." Thus, the police had no obligation to stop questioning defendant. Moreover, even if defendant had unequivocally invoked her right to counsel, the prosecution argued that defendant reinitiated the conversation with the police after Detective Houstoulakis properly asked her to clarify her comment about needing a lawyer without continuing to interrogate her.

The trial court granted defendant's motion for a *Walker*[3] hearing.

At the hearing, Detective Houstoulakis testified that he was called in to investigate an incident concerning a severely injured toddler who experienced head trauma. After Detective Houstoulakis identified defendant as a suspect and brought her in for questioning, he began the interrogation by providing defendant with a constitutional rights form to advise her of her *Miranda* rights. The video recording of the police interview was admitted as an exhibit. It showed defendant reading the *Miranda* form out loud, affirming that she understood each right, placing her initials next to each right, and signing the form.

The *Miranda* rights form was also admitted into evidence. The rights listed on that form included "the right to talk to a lawyer and have him present . . . while . . . being questioned" as well as the right to appointed counsel if defendant could not afford to hire a lawyer. On the video, during the discussion of the right to court-appointed counsel, defendant said that if KM's mother "was to press charges on her or something" because defendant was "watching" KM, "that would be the only reason for [defendant] having a lawyer." At the hearing, Detective Houstoulakis also testified that defendant "wanted an attorney only if the victim's mother wished to pursue criminal

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[3] *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965).

charges." The videotape showed that Detective Houstoulakis informed defendant that the police were still at the investigative stage and that there were no criminal charges. The police also advised defendant of her "right to remain silent," and her ability to "decide at any time to exercise [her] rights and not answer any questions or make any statements."

At about 12:22 p.m. on the videotape, defendant was crying and alone with Detective Houstoulakis when she said: "I just need a lawyer or something, I need a lawyer." As defendant continued to weep, Detective Houstoulakis stated: "Okay. You don't wanna answer any more questions?" Defendant did not respond, but continued to cry. Detective Houstoulakis then said: "Kimora, listen, I'm here for you, alright" and he continued to speak before defendant interjected. Defendant said: "That's not what was not supposed to happen." Detective Houstoulakis responded: "What do you think 'that' is?"[4] Defendant, who was still sobbing, stated: "You all just want me to blame." Detective Houstoulakis replied "No," before defendant added: "You all just want me to say I put my anger on [KM]. That's not what it is."[5] Detective Houstoulakis then told defendant:

> All we're doing is seeking the facts. That's it. And if you don't want to talk anymore, we can be done. It's okay. I am doing this as a courtesy for you, but also for you to get it off your chest – to get the weight off your chest. If you don't want to talk, we don't have to talk. We can be done. Alright. Ah, out of respect for you, I'll do that. Okay? But, I'm here, I'm here to help you, alright. And the family. I'm here for everyone. I'm a neutral party in this. And I wanna try, to try and make the best out of a bad situation.

Defendant, who continued to cry, replied, "What do you want me to say?" Detective Houstoulakis told defendant that he was "not asking [her] to lie about anything" or put words in defendant's mouth. But, before he finished, defendant interrupted, stating: "I'm not lying." Detective Houstoulakis responded, "I know." Defendant then said "Maybe I hit him too hard, but I didn't take my anger [out] on him" as she continued to sob. Detective Houstoulakis then asked, "just so [he was] clear," whether defendant wanted to "converse with [him]," whether she wanted to "talk" or whether she "want[ed] to be done." Defendant responded, "Talk." Detective Houstoulakis then summed up defendant's response as "[y]ou want to go forward." The interview ended about an hour later.

During the *Walker* hearing, Detective Houstoulakis testified that he did not interpret defendant's statement ("I need a lawyer or something") as an "unequivocal statement of I'm done here, I don't want to answer any more questions." In his view, defendant "was contemplating ending the conversation so [he] followed . . . up to get clarification." Detective Houstoulakis later testified:

---

[4] At the *Walker* hearing, both Detective Houstoulakis and defendant agreed that the detective asked "Why do you think that is?"

[5] Throughout the interview, both officers repeatedly posited that defendant acted in frustration or anger against KM to inflict the injuries he suffered.

> I told her just so we're clear do you want an attorney or do you want to proceed with . . . questioning. I'm paraphrasing myself. It's not a direct quote[.] I'm just – but that was my question to her to solidify whether or not she wanted an attorney or she wanted to continue with the interview.

And he testified that it was defendant who reinitiated the interrogation by discussing issues raised earlier in the interview.

Defendant, on the other hand, testified she asked for a lawyer "more than once" during the interrogation. Defendant confirmed that she had read and signed the form that stated she had the right to stop speaking to Detective Houstoulakis at any moment. Defendant was also aware that she could stop talking at any moment because it was "on the form." Defendant further agreed that Detective Houstoulakis offered to stop the interrogation multiple times, yet defendant never stated that she wanted to stop.

After the *Walker* hearing, the parties filed supplemental briefs. In its brief, the prosecution maintained that "[d]efendant's statement 'I just need a lawyer or something, I need a lawyer' was her contemplating her situation out loud and was not an unequivocal demand for counsel." Therefore, the police were not required to stop questioning, and "went above and beyond their duties to attempt to clarify [d]efendant's statement." Moreover, "[d]efendant reinitiated questioning when she said, 'This was not supposed to happen.' " The detective's interim statements, " 'Okay, you don't want to answer any more questions[]' " and 'Kimora, listen I'm here for you[,]' did not involve express questioning[,]" and, therefore, did not constitute interrogation.

In defendant's brief, she argued that a reasonable officer would have understood defendant's initial remark about wanting counsel if charges were pressed as a request for counsel under the circumstances. Those circumstances included KM's dire condition and defendant's arrest as well as the experienced detective's knowledge that criminal charges were likely. Moreover, defendant did not knowingly waive her right to counsel by stating " 'This wasn't supposed to happen[]' " because she did not know that speaking would waive her previously-invoked right to counsel. And in making that "vague statement," defendant did not reinitiate the conversation with the police.

The trial court subsequently denied defendant's motion to suppress in a written opinion and order. The trial court concluded that defendant's first statement that she only wanted a lawyer if KM's mother pursued charges against her did not constitute an unequivocal request for counsel because it was "conditional upon charges being filed against [her]," and thus, defendant merely suggested that she might want an attorney in the future. Because defendant's statement was "ambiguous and equivocal[,] . . . [Detective] Houstoulakis was not required to cease questioning. . . ." Regarding defendant's second statement that defendant "just need[ed] a lawyer or something," the trial court likewise determined that it "was not clear or unambiguous." The court reasoned:

> The statement on one hand seeks a lawyer or something and, on the other, indicates a "need" for a lawyer. Such a statement is different than a suspect's express, unambiguous, and present request for a lawyer.

-4-

The trial court further determined that, even if defendant had affirmatively invoked her right to counsel in making this statement, "she nonetheless reinitiated the interrogation and admitted as such [sic]." The court explained that Detective Houstoulakis was asking clarifying questions about defendant's statements pertaining to a lawyer when defendant said that the underlying incident was not supposed to happen. And even though Houstoulakis informed defendant that he was there for her, he only did so in the course of clarifying whether she wished to continue to speak to him. Thereafter, defendant agreed to move forward with questioning, waiving her right to counsel. For these reasons, the trial court denied defendant's motion to suppress.

Defendant filed an interlocutory application for leave to appeal, challenging the trial court's order denying her motion to suppress the statements she made to police. We granted her application. *Hodges*, unpub order.

## II. STANDARD OF REVIEW

We "review[] de novo a trial court's ultimate ruling on [a] defendant's motion to suppress." *People v Smart*, 304 Mich App 244, 247; 850 NW2d 579 (2014) (quotation marks and citation omitted). And, although appellate courts review questions of law de novo, our review of a lower court's factual findings is limited to clear error. *People v Daoud*, 462 Mich 621, 629-630; 614 NW2d 152 (2000). Unless we are left with a definite and firm conviction that a mistake was made, those factual findings will be affirmed. *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996).

## III. ASSERTION OF RIGHT TO COUNSEL

Defendant argues the trial court erred when it denied her motion to suppress her statements made to the police during the interrogation. Specifically, she asserts that she unambiguously requested an attorney when she stated that: (1) she would want an attorney if KM's mother pursued charges against her and (2) she needed a lawyer. We disagree with defendant's first claim, but agree with her second.

## A. CONTROLLING LEGAL PRINCIPLES

"Every person has a constitutional right against self-incrimination." *People v Barritt*, 325 Mich App 556, 561; 926 NW2d 811 (2018), citing US Const, Am V; Const 1963, art 1, § 17. "To protect a defendant's Fifth Amendment privilege against self-incrimination, custodial interrogation must be preceded by advice to the accused that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *People v Cortez (On Remand)*, 299 Mich App 679, 691; 832 NW2d 1 (2013) (quotation marks and citation omitted). If a suspect waives the right to counsel after receiving *Miranda* warnings, "law enforcement officers are free to question him." *Davis v United States*, 512 US 452, 458-459; 114 S Ct 2350; 129 L Ed 2d 362 (1994). But "[w]hen a defendant invokes his right to counsel, the police must terminate their interrogation immediately and may not resume questioning until such counsel arrives." *People v Tierney*, 266 Mich App 687, 710-711; 703 NW2d 204 (2005), citing *Edwards v Arizona*, 451 US 477, 482; 101 S Ct 1880; 68 L Ed 2d 378 (1981). "[T]he defendant's invocation of his right to counsel must be unequivocal." *Tierney*, 266 Mich App at 711, citing *Davis*, 512 US at 457. " '[I]f

a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel,' " the officer is not required to cease questioning. *Id*., quoting *Davis*, 512 US at 459. "To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry." *Davis*, 512 US at 458-459. "Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Id*. at 459 (quotation marks and citation omitted).

## B.  DESIRE FOR A LAWYER IF THE VICTIM'S MOTHER PRESSED CHARGES

After our review of the record, we conclude that the trial court did not clearly err in concluding that defendant's initial statements regarding the need for counsel did not constitute a clear and unambiguous request for counsel.

The video showed that, as the police advised defendant of her *Miranda* rights, she stated that the only reason for having a lawyer was if KM's mother "was to press charges on [her] or something" because defendant had been babysitting KM. Detective Houstoulakis conveyed that they were at the investigative stage and that no criminal charges were known. Thereafter, defendant signed the *Miranda* form that reflected her constitutional rights and proceeded to answer the detectives' questions.

In *People v Granderson*, 212 Mich App 673; 538 NW2d 471 (1995), this Court addressed a defendant's future request for counsel. In that case, the defendant was taken into custody and given his *Miranda* rights before the police interrogation began. *Id*. at 676. The interrogating police officer gave the defendant a form listing his *Miranda* rights, which the officer read to the defendant. *Id*. The police officer then told the defendant that, if he wanted an attorney and could not afford one, the state would pay for an attorney for him. The defendant responded, "Yeah, I'm—I'm ah need that 'cause I can't afford none." *Id*. The bottom of the waiver form stated, "I do not want an attorney at this time." *Id*. The police officer asked defendant if he understood what this meant, and the defendant said that he did. *Id*. The officer then asked the defendant whether he was still willing to speak to the officer about the incident. *Id*. The defendant responded affirmatively and then signed the waiver of rights form. *Id*. This Court concluded that the "[d]efendant's words reveal[ed] that he would, at some future time, be in need of a court-appointed attorney, because he would be unable financially to retain one." *Id*. This Court explained that "[t]he term 'I'ma,' transcribed as 'I'm ah,' has been recognized as a nonstandard reduction of 'I'm gonna.' " *Id*., quoting Shores, *Contemporary English* (J.B. Lippincott Co, 1972), p 72. In turn, " 'I'm gonna[]' . . . is what is termed pronunciation spelling of 'I'm going to.' " *Id*., citing *Random House Webster's College Dictionary* (1992), p 574. Thus, substituting this verbiage, this Court read the defendant's request as " 'I am going to need that [a court-appointed attorney] because I cannot afford one,' a simple future tense." *Id*. at 676-677. Accordingly, this Court was convinced that the "defendant's language reflected no present desire for counsel." *Id*. at 677. Because the defendant only might want a lawyer, "the police were not required to refrain from questioning [the] defendant." *Id*. at 678.

Like the defendant in *Granderson*, defendant's words in this case expressed a desire for counsel if KM's mother opted to press charges against her in the future. Accordingly, the trial court did not clearly err when it determined that defendant had not clearly and unequivocally invoked her right to counsel and that the police could continue with their questioning. See *Davis*, 512 US at 459.

## C. "I JUST NEED A LAWYER OR SOMETHING, I NEED A LAWYER."

The trial court also found defendant's statement that she " ' just need[ed] a lawyer or something[]' was not clear or unambiguous." The trial court explained that "[t]he statement on the one hand seeks a lawyer or something and, on the other [hand], indicates a 'need' for a lawyer." The trial court then quoted this Court's opinion in *People v Mesman*, unpublished per curiam opinion of the Court of Appeals, issued October 13, 2009 (Docket No. 285487), p 3, for the proposition that "[w]hile [the] defendant's statements regarding his need for legal representation can reasonably be interpreted as a present demand for counsel, they are also equally susceptible to the interpretation by [a] trial court that although [the] defendant indicated the need to procure a lawyer in the future, he was willing to continue the interview." Although the trial court recognized that this Court's unpublished opinions were not binding, see MCR 7.215(C)(1), it considered *Mesman* persuasive.

In *Mesman*, in the midst of a custodial interview, the defendant said: "I think, I know, I know pretty much I need a lawyer now." *Mesman*, unpub op at 2. Immediately thereafter, the defendant denied that he did not want to talk. He also purportedly said that he did not want to talk to a lawyer before clarifying that he meant that he was "gonna need a lawyer but [would] still talk" to the police. *Id*. Finally, after being informed that the police would leave and not ask him further questions, the defendant affirmed his continued desire to continue to speak with the police despite thinking that he needed a lawyer. *Id*. at 3.

What occurred in *Mesman* is factually distinguishable from what transpired in this case. In any event, we are neither bound nor persuaded by the statement that the trial court plucked from *Mesman* under the facts presented in this case. As a transitive verb, the word "need" is "to be in need of: **REQUIRE**." *Merriam-Webster's Collegiate Dictionary* (11th ed). Numerous appellate courts have had no difficulty in holding that, when a suspect states, "I need a lawyer," during the course of a police interview, he has made an unequivocal invocation of his right to counsel. See e.g., *State v Little*, 604 SW3d 708, 717 (Mo Ct of Appeals, 2020); *Wilson v State*, 274 So3d 549, 553 (Fla Dist Ct of Appeal, 2019); *United States v Sweeney*, 887 F3d 529, 536-537 (CA 1, 2018); *State v Pierce*, 169 Wash App 533, 544; 280 P3d 1158, 1165 (2012). Construing "I need a lawyer," as an "unequivocal invocation" of the right to counsel is consistent with the police advising defendant that she had "the right to talk to a lawyer and have him present with [her] while [she was] being questioned," and that she could "decide at any time to exercise these rights."

While we recognize that we are not bound by the decisions of intermediate federal or state appellate courts, *People v Lucynski*, 509 Mich 618, 638 n 10; 983 NW2d 827 (2022); *People v DeRousse*, 341 Mich App 447, 456; 991 NW2d 596 (2022), we find the Kentucky Supreme Court's decision in *Bradley v Commonwealth*, 327 SW3d 512 (Ky, 2010) persuasive. *Bradley* concerned an analogous situation, in which the Kentucky Supreme Court held that a defendant's statement "I

need a lawyer or something" was an equivocal assertion, but, this statement became unequivocal when, after the officer sought clarification, the defendant responded clearly: "A lawyer." *Id*. at 516-518. The Court reasoned that:

> Had Bradley said only, "[w]ell, you know, I need a lawyer" then it would have been clear that he was invoking his right to counsel. The issue is rendered less clear by Bradley's added "or something" to his statement. Obviously, the generic phrase "or something" lends some superficial credence to the Commonwealth's claim that Bradley's request was equivocal. But taken in the relevant context of the questioning, we do not conclude that the phrase "or something" defeats the otherwise clear request for counsel.
>
> Our conclusion is supported by the fact that Detective Williamson asked Bradley for clarification, to which Bradley responded simply "[a] lawyer." At that point, any ambiguity with regard to Bradley's desire to invoke his right to counsel was erased. And, crucially, Detective Williamson obviously believed that Bradley had invoked his right to counsel because he responded "[t]hat's your right." Taken in full context, Detective Williamson's recognition that Bradley had a right to counsel is subject to no other reasonable interpretation other than Detective Williamson subjectively recognizing that Bradley had attempted to invoke his right to counsel.
>
> Of course, the test for whether a suspect has clearly invoked the right to counsel is objective, not subjective. But, when the entirety of the relevant exchange between Bradley and Detective Williamson is considered in context, we conclude that Detective Williamson's subjective acknowledgement that Bradley had invoked his right to counsel is also what an objective, reasonable person would have derived from Bradley's statements. After all, other than the odd phrase "or something," there is no tentativeness or doubt in the words Bradley used, as is commonly the case when a court deems a purported invocation of the right to counsel to be equivocal. For example, Bradley did not declare that "maybe" he needed a lawyer or that he "might" need a lawyer, nor did he ask Williamson if he believed that Bradley needed a lawyer. In short, Bradley's comments bear none of the commonly encountered signs of equivocation that would support a conclusion that the suspect has not unequivocally invoked his right to counsel. [*Id*. at 516-518 (footnotes and citations omitted).]

In this case, Detective Houstoulakis had been an officer for ten years and was an experienced detective in the Criminal Investigations Division, conducting about 70 *Miranda* interviews over three-and-one-half years. He was one of two police officers who had interviewed defendant beginning at 10:38 a.m. At about 12:22 p.m., Detective Houstoulakis was alone with defendant. Defendant was crying when she told the detective, "I just need a lawyer or something, I need a lawyer." To the extent that defendant's initial statement was ambiguous, defendant removed any ambiguity when she subsequently declared "I need a lawyer." Detective Houstoulakis admitted that he clearly heard defendant say: "I need a lawyer[,]" and acknowledged this statement during the interrogation when he said "Okay." Despite his own acknowledgment, Detective Houstoulakis testified that he did not feel like defendant was asking for a lawyer at the

moment, and that her statement "was not a clear statement that I'm done talking, I want an attorney, [and] I don't want to continue with this interview." Therefore, Detective Houstoulakis asserted he attempted to clarify whether defendant wanted to end the interview by asking her whether she wanted an attorney or wanted to proceed with questioning. The problem is, not only does the video recording reflect that Detective Houstoulakis never explicitly asked defendant a question to clarify whether she wanted an attorney before proceeding, it clearly shows that Detective Houstoulakis understood defendant's statement to be unequivocal when he responded "okay" before moving on to ask: "You don't wanna answer any more questions?"[6] Detective Houtstoulakis was clearly on notice that defendant unequivocally stated she wanted an attorney. His questions should have stopped there.

Moreover, any subjective confusion Detective Houstoulakis may have faced is not determinative because the standard under which officer's actions are reviewed is objective. *Davis*, 512 US at 458-459. Our determination turns on whether "a reasonable police officer in the circumstances would understand the [suspect's] statement to be a request for an attorney." *Id*. at 459 (quotation marks and citation omitted). For the reasons we have already discussed, a reasonable officer would have understood defendant's statement "I just need a lawyer or something, I need a lawyer" as an unequivocal request for an attorney. Accordingly, we conclude that the trial court clearly erred when it determined defendant's statement that she needed a lawyer was an unclear and ambiguous request for counsel that allowed for police clarification.

## D. RE-INITIATION

Defendant also argues that the trial court erred when it determined that, even if defendant had unequivocally invoked her right to counsel, she reinitiated the interview by asking questions related to the offense. We agree.

In *Edwards*, 451 US at 484-485, the United States Supreme Court held that once an accused has "expressed his desire to deal with the police only through counsel, [he] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." See also *People v Tanner*, 496 Mich 199, 208; 853 NW2d 653 (2014) ("Once a suspect invokes his right to remain silent or requests counsel, police questioning must cease unless the suspect affirmatively reinitiates contact."). This rule is designed to prevent the police from badgering a suspect into waiving his previously asserted *Miranda* rights. See *McNeil v Wisconsin*, 501 US 171, 177; 111 S Ct 2204; 115 L Ed 2d 158 (1991). Moreover, "if a suspect believes that he is not capable of undergoing [police] questioning without advice of counsel, then it is presumed that any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself

---

[6] We note that it is unclear from the videotape whether Detective Houstoulakis was making a statement or asking a question. During the *Walker* hearing, the detective testified that he was asking a clarifying question and the trial court concluded that he asked clarifying questions. Because the videotape is unclear, we cannot conclude that the trial court clearly erred in deciding that the detective asked a clarifying question.

the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect." *Arizona v Robertson*, 486 US 675, 681; 108 S Ct 2093; 100 L Ed 2d 704 (1988).

On the other hand, "if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning." *Davis*, 512 US at 459. Certainly, "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney." *Id.* at 461. But, in a case involving an equivocal or ambiguous invocation of a suspect's right to counsel, our Supreme Court "decline[d] to adopt a rule requiring officers to ask clarifying questions." *Id.*

In contrast to *Davis*, the *Edwards* rule potentially embodies two separate inquiries. *People v Clark*, 330 Mich App 392, 419; 948 NW2d 604 (2019). The first is "whether the accused actually invoked his right to counsel. . . ." *Id.* (citation omitted). If so, a court may admit the accused's responses to further police questioning upon finding that he initiated further discussions with the police and that he made a knowing and intelligent waiver of the right he had invoked. *Id.* (citation omitted). See also *Oregon v Bradshaw*, 462 US 1039, 1044-1046; 103 S Ct 2830; 77 L Ed 2d 405 (1983) (plurality opinion). "[T]he test is whether, under the totality of the circumstances, the person voluntarily, knowingly, and intelligently waived his right to counsel and to remain silent." *Clark*, 330 Mich App at 398. This Court has held that the "police are not required to read *Miranda* rights every time a defendant is questioned." *People v Littlejohn*, 197 Mich App 220, 223; 495 NW2d 171 (1992) (citation omitted). See also *Clark*, 330 Mich App at 418-419 ("[T]here is no binding authority for the proposition that the police officers were required to readvise defendant of his *Miranda* rights simply because he had earlier invoked his right to counsel."). It is sufficient that the police officer reminded the defendant that he had earlier been advised of his rights and asked whether he still understood them after the defendant "independently initiated contact" with the officer. *Littlejohn*, 197 Mich App at 223. An accused initiates further communication with law enforcement when he makes a statement that evinces a "willingness and a desire for a generalized discussion about the investigation" that could "reasonably have been interpreted by the officer as relating generally to the investigation." *Bradshaw*, 462 US at 1045-1046.

In this case, Detective Houstoulakis proceeded with clarifying questions, presumably under *Davis*, due to his belief that defendant's statement "I just need a lawyer or something, I need a lawyer" was equivocal. As we have already concluded, defendant's statement that she needed a lawyer was unequivocal. Thus, the outcome is controlled by *Edwards*, not *Davis*. There is no dispute that Detective Houstoulakis did not cease questioning defendant after she unequivocally invoked her right to counsel. The videotape showed that Detective Houstoulakis asked: "You don't wanna answer any more questions?[7] Kimora, listen, I'm here for you, alright." Detective

---

[7] See footnote 6.

Houstoulakis further said: "I'm," before defendant interjected "That's not what was supposed to happen." To which, Detective Houstoulakis responded: "What do you think 'that' is?"[8]

The trial court concluded that defendant reinitiated the conversation with police when she said, "That was not supposed to happen." This finding was clearly erroneous under *Davis*, *Bradshaw*, and *Littlejohn*. Defendant did not independently initiate contact with Detective Houstoulakis, but responded to his question about whether she no longer wished to speak to him and his request that she listen to his statement that he was there for her.[9] Accordingly, the trial court clearly erred in denying defendant's motion to suppress evidence pertaining to her unequivocal request for a lawyer and the determination that defendant reinitiated the interview with the police.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Anica Letica

---

[8] See footnote 4.

[9] In light of our disposition, we need not address whether defendant voluntarily, knowingly, and intelligently waived her right to counsel and her right to remain silent.